**Leonard KENEBREW, Plaintiff,**

v.

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY A CIGNA COMPANY; Cigna Healthplan of Illinois, Inc.; Cigna Healthplan of Texas, Inc.; Cigna Healthplan of Arizona, Inc. Cigna Healthplan of Southern California, Inc.; and Ross Loos Medical Group d/b/a Cigna Healthplan of Northern California, Defendants.**

No. 94 C 3294.

United States District Court,
N.D. Illinois,
Eastern Division.

April 21, 1995.

Nanette K. Raduenz, Morton L. Efron, Efron & Efron, P.C., Hammond, IN, for Leonard Kenebrew.

William E. Hoversen, Jr., Modesto, Reynolds & McDermott, Chicago, IL, for defendants.

*MEMORANDUM OPINION AND ORDER*

GETTLEMAN, District Judge.

Plaintiff Leonard Kenebrew filed this complaint against Defendants CONNECTICUT GENERAL LIFE INSURANCE COMPANY a CIGNA COMPANY; CIGNA HEALTHPLAN OF ILLINOIS, INC.; CIGNA HEALTHPLAN OF TEXAS, INC.; CIGNA HEALTHPLAN OF ARIZONA, INC. CIGNA HEALTHPLAN OF SOUTHERN CALIFORNIA, INC.; and ROSS LOOS MEDICAL GROUP d/b/a CIGNA HEALTHPLAN OF NORTHERN CALIFORNIA, (collectively, "CIGNA"), alleging actual and exemplary damages under the Illinois Sales Representative Act, breach of contract, and quantum meruit. Defendants have moved to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), or, in the alternative, for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

### FACTS

This is a diversity action in which the court is presented with the threshold question of whether the jurisdictional amount required by 28 U.S.C. § 1332(a) has been satisfied. Diversity of citizenship among the parties is uncontested, but the amount in controversy must exceed $50,000 for this court to have jurisdiction. Therefore, because the actual damages alleged are less than $50,000, federal jurisdiction exists only if the Illinois Sales Representative Act, which provides for treble damages, applies to this case.

Plaintiff is a licensed insurance agent in the State of Illinois, and had established an agency relationship with defendants for the purpose of selling insurance. In November 1992, plaintiff entered into various contracts with CIGNA, pursuant to which he represented CIGNA as an agent and independent contractor for the purpose of establishing health and dental prepaid insurance plans between TransAmerica, Inc. ("TransAmerica") and CIGNA.

In return for plaintiff's role in selling and continuously servicing those accounts on behalf of CIGNA, CIGNA agreed to pay plaintiff commissions based on premiums paid by TransAmerica. The various contracts between plaintiff and CIGNA listed the rates at which commissions would be earned and, according to the contracts, commissions would be calculated based on the actual monthly net premium received from TransAmerica. The contracts state that commissions earned are payable upon actual receipt of the premiums paid by TransAmerica, and would be payable for as long as plaintiff was the agent of record. Plaintiff was the agent of record until March 1993, at which time he was released from his position by TransAmerica, who designated a new agent of record. At issue are the commissions based on premiums CIGNA received from TransAmerica from March 1993 to December 1993. Plaintiff had obtained TransAmerica's business on behalf of CIGNA in November 1992, for calendar year 1993. Plaintiff contends that he is entitled to these commissions, totalling $20,459.64, because he was the agent of record at the time the policy was secured. Plaintiff also asserts a claim for exemplary damages not to exceed $61,648.92 under the Illinois Sales Representative Act, for defendants' failure to pay the commissions allegedly owed. In response, CIGNA filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), contending that plaintiff has failed to establish diversity jurisdiction because the amount in controversy is only $20,459.64, the amount of the commissions at issue. CIGNA asserts that the Illinois Sales Representative Act does not apply to insurance sales representatives because such representatives do not sell tangible goods or products. In the alternative, CIGNA asserts that plaintiff has failed to state a claim for which relief could be granted pursuant to Fed.R.Civ.P. 12(b)(6), because the contract specifies that the commissions were payable to the agent of record at the time the premiums were paid, not to plaintiff.

For the following reasons, the court finds that plaintiff has failed to establish the requisite amount in controversy for federal diversity jurisdiction. Accordingly, CIGNA's motion for lack of subject matter jurisdiction is granted.

### STANDARD OF REVIEW

In order for the court to exercise diversity jurisdiction over a case, the amount in controversy must exceed "the sum or value of $50,000, exclusive of interest and costs...." 28 U.S.C. § 1332(a). The amount in controversy requirement is met initially if the good faith allegations establish that the amount in dispute is more than $50,000. *Loss v. Blankenship,* 673 F.2d 942, 950 (7th Cir.1982). The court is not bound to accept, however, the mere allegations in the plaintiff's complaint, *ITT Commercial Finance Corp. v. Unlimited Automotive, Inc.,* 814 F.Supp. 664, 667 (N.D.Ill.1992); *Racich v. Mid Continent Builders Co.,* 755 F.Supp. 228, 229 (N.D.Ill.1991), and the party seeking federal jurisdiction bears the burden of supporting its jurisdictional allegations by "competent proof." *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir. 1979). The plaintiff is allowed considerable latitude in supporting the allegations and must be given the benefit of any facts that could conceivably be proven. *Racich,* 755 F.Supp. at 229. Finally, in a diversity action, the court will not dismiss a case because of a jurisdictional amount deficiency unless it appears to a legal certainty that the plaintiff cannot meet the required amount in controversy. *ITT Commercial Fin. v. Unlimited Auto.,* 814 F.Supp. 664, 667 (N.D.Ill.1992).

In determining the amount in controversy, the amount demanded may be the aggregate of compensatory damages and punitive damages when both types are recoverable. *Bell v. Preferred Life Assurance Soc. of Montgomery,* 320 U.S. 238, 240, 64 S.Ct. 5, 5–6, 88 L.Ed. 15 (1943); *Sharp Electronics Corp. v. Copy Plus, Inc.,* 939 F.2d 513, 515 (7th Cir.1991). For purposes of a Rule 12(b)(1) motion where compensatory damages alone do not satisfy the jurisdictional amount requirement under section 1332, the court must determine whether punitive damages are recoverable under the applicable state law; if they are found to be recoverable, then the court must determine whether the complaint satisfies the jurisdictional amount to a legal certainty. *Sharp,* 939 F.2d at 515; *Cadek v. Great Lakes Dragaway, Inc.,* 1994 WL 449284, *2 (N.D.Ill.1994).

The court recognizes that "when the issue of jurisdictional amount is intertwined with the merits of the case, 'courts should be careful not to decide the merits, under the guise of determining jurisdiction without the ordinary incident of trial.'" *Loss,* 673 F.2d at 950. When a claim for punitive damages, however, "comprises the bulk of the amount in controversy and may have been colorably asserted solely or primarily for the purpose of conferring jurisdiction, that claim should be given particularly close scrutiny." *Cadek,* 1994 WL 449284, *2. Further, it is a question of law for the court, not for the jury, to decide whether a plaintiff has established that punitive damages are available. *Racich,* 755 F.Supp. 228, 229 (N.D.Ill.1991) (citing *AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc.,* 896 F.2d 1035, 1043 (7th Cir. 1990)).

### DISCUSSION

Because plaintiff seeks only $20,459.64 in commissions (i.e., compensatory damages) his jurisdictional claim is grounded on the additional $61,648.92 in exemplary damages sought under the Illinois Sales Representative Act 820 ILCS § 120/1 *et. seq.* (the "Act"). Therefore, the critical question before the court is whether insurance sales representatives fall within the protection of the Act in order to satisfy the jurisdictional amount required under 28 U.S.C. § 1332(a).

The Act provides for exemplary damages not to exceed three times the amount of commissions found to be owed to a "sales representative" from a "principal." 820 ILCS 120/3. Principals and sales representatives are defined as:

(3) "Principal" means a sole proprietorship, partnership, corporation or other business entity whether or not it has a permanent or fixed place of business in this State and which:

(A) Manufactures, produces, imports, or distributes a product for sale ...

(4) "Sales representative" means a person who contracts with a principal to solicit orders and who is compensated, in whole

or in part, by commission, but shall not include one who places orders or purchases for his own account for resale ...

820 ILCS 120/1(3), (4).[1]

Whether plaintiff is protected by the Act is a question of statutory construction. The Illinois Supreme Court held recently in *Solich v. Portes Cancer Prevention Center*, 158 Ill.2d 76, 196 Ill.Dec. 655, 630 N.E.2d 820 (1994), that "the cardinal rule of statutory construction, to which all other canons are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature." *Id.*, at 81, 196 Ill.Dec. 655, 630 N.E.2d 820. *See also Bagcraft Corp. of America v. Federal Ins. Co.*, 848 F.Supp. 115, 117 (N.D.Ill.1994) (primary consideration of statutory construction is ascertaining and giving effect to the legislative intent). Courts should look to "the statutory language, for the language of the statute is the best indication" of legislative intent. *Id.* Where the meaning is unclear from the language itself, the court may look beyond the language used and "consider the purpose behind the law and the evils the law was designed to remedy." *Id.* While Illinois courts, in determining legislative intent, are particularly mindful of "both the objective the statute seeks to accomplish and the evils it was designed to remedy," *Whelan v. County Officers' Electoral Board of DuPage County*, 256 Ill.App.3d 555, 196 Ill.Dec. 297, 299, 629 N.E.2d 842, 844 (1994), legislative intent is found foremost in the language of the statute. *See People v. Zaremba*, 158 Ill.2d 36, 196 Ill.Dec. 632, 630 N.E.2d 797 (1994).

CIGNA contends that it is not a "principal" and plaintiff is not a "sales representative" under the Act because health and dental insurance plans are not "products" within the plain meaning of the Act. While no Illinois court has yet to determine what constitutes a product under the Act, CIGNA argues that the plain meaning of the words used—"manufactures," "produces," "imports," and "distributes"—demonstrate a legislative intent that the statute was to apply to fabricated, tangible goods. Because insurance policies are intangible and are not "manufactured," "produced," "imported," or "distributed," CIGNA contends that the statute by its own language can be applied only to sales representatives of those classes of manufactured goods as reasonably understood in the context of the statute.

CIGNA further asserts that the legislative debate in the Illinois General Assembly on the original statute, as well as subsequent amendments, support its argument that the statute was meant to apply to tangible goods. The comments during the debate make reference to "manufacturers' representatives," or "salesmen of manufactured merchandise."[2] CIGNA contends that all of the debates concerned the commissions payable to salesmen of manufactured, fabricated products and do not include the sale of intangibles such as insurance.

Plaintiff asserts that the language of the statute and its history fail to provide any insight into whether insurance sales representatives fall within the protection of the statute, making it necessary to address the purpose of the Act and the evil it was meant to remedy. Plaintiff argues that the Act is applicable to the facts of this case, thereby entitling him to protection, because the purpose of this Act was to protect the rights of independent contractors hired as sales representatives.

Plaintiff further argues that the debates of the Illinois General Assembly reveal the Act's purpose and the reason why the statute

---

**1.** This statute as originally enacted defined a "principal" as one who manufactured, produced, imported, or distributed a product "for wholesale." Likewise, a "sales representative" was limited to one who solicited "wholesale orders." See *Holtz v. Plastore, Inc.*, 760 F.Supp. 698 (N.D.Ill.1991). Defendants assert that the concept of health and dental insurance sold on a wholesale level is an "absurdity" and defeats any notion that this Act was intended to cover such sales.

**2.** Additionally, the Act was amended in 1989 to include within its scope those cases where delivery of goods was outside of Illinois, which defendants argue supports implicitly the argument that the statute was meant to protect sales representatives of tangible goods capable of importation and delivery. Another amendment deleted references in the original Act to "wholesale" transactions for the purpose of extending coverage to sales made in retail outlets.

was enacted: the legislature realized a serious problem existed in the relationship between the principal and the sales representative, where a principal would terminate a sales representative's contract after the sale was made but before payment of earned commissions. In order to receive the commissions, the only option available to the sales representative was costly and protracted litigation. Plaintiff argues that applying the Act to this case would be consistent with the statute's legislative history and would accomplish its goals.

Both parties have presented persuasive arguments for determining whether the Act was intended for the protection of sales representatives who sell insurance.[3] It is beyond question, however, that the words of the statute are the best indicator of legislative intent. *Solich,* 158 Ill.2d at 81, 196 Ill.Dec. 655, 630 N.E.2d 820. While the language of the statute does not explicitly define products only in terms of manufactured products or tangible goods, the most reasonable construction of the statute's plain meaning is to not include intangibles such as insurance because of the context in which the term "product" is found. The statute does not use broad or open-ended language; rather, it provides a defined context in which to interpret the word "product." The terms "manufacture," "produce," "import," and "distribute" are identifiable with tangible, manufactured goods, not with intangible items or services such as insurance. For example, Websters II dictionary (1994 edition) defines "manufacture" as: "to make or process (a raw material) into a finished product, esp. by a large-scale industrial operation." Similarly, "import" is defined as: "to bring or carry in from an outside source, esp. to bring in (goods) from a foreign country or trade source." An intangible item or service, such as sold by plaintiff simply does not fit within the plain meaning of the wording of the statute.

█ Moreover, while the purpose of the Act may have been to protect sales represen-

tatives from being terminated before they are paid the commissions owed to them, it does not mean that the legislature intended that the Act encompass all sales representatives. Had the Illinois legislature intended to include insurance sales within the Act, it is not evident in the restrictive language defining the term "product." The legislature can be presumed to have been aware of the various types of sales representatives that worked in Illinois, both at the time of the original enactment and when it was amended, and yet the debates continued to center around manufacturing representatives selling manufactured, tangible items that are capable of being produced, imported, or distributed. Additionally, the court notes that the insurance industry is highly regulated in Illinois. If the Illinois legislature intended to protect insurance sales representatives, it most likely would have done so specifically, rather than lumping such protection into a general statute.

Significantly, plaintiff's sales at issue in the instant case were entirely of services. As the contracts between the two parties demonstrate, plaintiff was hired to act as the agent of record for soliciting and maintaining policy plans for existing prepaid health insurance. The "product" plaintiff sold was the service of administering those pre-paid plans. Plaintiff's customers are not paying money to receive a plan of protection (i.e., an insurance policy), they are paying to receive claims management services.

Finally, it is a well-recognized principle of statutory construction that legislative silence is not an invitation to judicial lawmaking. *Morrison–Knudsen Construction Co. v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor,* 461 U.S. 624, 643, 103 S.Ct. 2045, 2055–56, 76 L.Ed.2d 194 (1983). While this principle could lend itself to either interpretation, this court is not willing to expand the definition and scope of the Act if the Illinois legislature has not chosen to do so, and where the statute's plain mean-

---

**3.** Unfortunately, this court has no Illinois case law to guide its decision. One Illinois court recently interpreted the Act (*Maher and Associates, Inc. v. Quality Cabinets,* 267 Ill.App.3d 69, 203 Ill.Dec. 850, 640 N.E.2d 1000 (2nd Dist. 1994)), but did not address what would constitute a "principal" or "product." That court merely outlined what showing would be required regarding the principal's conduct to have exemplary damages imposed.

ing is most consistent with not including insurance sales within its scope. Any expansion of the statute is the role of the legislature and not this court.

■ This court therefore finds that the Illinois Sales Representative Act is inapplicable to the commissions at issue in this case, and thus plaintiff has failed to meet the amount in controversy required for jurisdiction.[4] Accordingly, defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) is granted.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss for lack of subject matter jurisdiction is granted.

4. Because plaintiff did not establish that under Illinois law punitive damages were recoverable, there is no need to determine the second step of the *Sharp* analysis (whether the amount alleged meets the jurisdictional requirement to a legal certainty.) Further, this court has no need to address defendants' alternative argument, that the plaintiff failed to state a claim upon which relief could be granted pursuant to Fed.R.Civ.P. 12(b)(6).