KLAPP v UNITED INSURANCE GROUP AGENCY, INC (ON REMAND)

Docket Nos. 219299, 219330. Submitted August 6, 2003, at Lansing. Decided November 20, 2003, at 9:10 A.M. Leave to appeal sought.

Craig A. Klapp brought an action in the Van Buren Circuit Court against United Insurance Group Agency, Inc., for breach of a contract to pay renewal commissions on insurance policies sold by the plaintiff as the defendant's agent. The trial court, Paul E. Hamre, J., denied the defendant's motion for summary disposition, and, following trial, the jury awarded the plaintiff the renewal commissions. The Court of Appeals, NEFF, P.J., and MURPHY and GRIFFIN, JJ., reversed in an unpublished opinion per curiam, holding that the trial court erred in not granting the defendant's motion for summary disposition. Accordingly, the Court of Appeals remanded the case for entry of judgment for the defendant and denied the plaintiff's motion for rehearing (Docket Nos. 219299, 219330). The plaintiff appealed by leave granted. The Supreme Court reversed the judgment of the Court of Appeals and remanded the matter to the Court of Appeals for consideration of the defendant's argument that the damages award was based on improper speculation about policy renewals and the plaintiff's challenge to the dismissal of his claim for double damages and actual attorney fees under the sales representative commissions act (SRCA), MCL 600.2961. 468 Mich 459 (2003).

On remand, the Court of Appeals *held*:

1. The SRCA does not apply to commissions owed for the sale of insurance policies.

2. The defendant waived the issue regarding whether the award of damages was supported by sufficient evidence by not filing a motion for a new trial or motion for remittitur in the trial court.

3. The defendant failed to preserve for appeal the issue whether the trial court admitted improper impeachment evidence.

Affirmed.

ACTIONS — SALES REPRESENTATIVE COMMISSIONS ACT — INSURANCE POLICY SALES.

The sales representative commissions act does not apply to commissions owed for the sale of insurance policies (MCL 600.2961).

*Warner Norcross & Judd LLP* (by *James Moskal*) for the plaintiff.

*Falcone & Rolfe, P.C.* (by *Brian H. Rolfe*), for the defendant.

ON REMAND

Before: NEFF, P.J., and MURPHY and GRIFFIN, JJ.

GRIFFIN, J. This case returns to our Court on remand from our Supreme Court for consideration of two issues not addressed in our previous unpublished opinion per curiam:

> Specifically, on remand, the Court of Appeals shall consider defendant's alternative argument that the damages award was based on improper speculation about policy renewals, and plaintiff's cross-appeal [sic],[1] which challenged the trial court's dismissal of his claim for double damages and actual attorney fees under the sales representative commissions act. MCL 600.2961. [*Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 461 n 1; 663 NW2d 447 (2003).]

I

These consolidated appeals arise out of a dispute over the payment of renewal commissions from insurance contract sales. Defendant United Insurance Group Agency, Inc., is an insurance company based in Michigan that employed plaintiff Craig A. Klapp as an insurance sales agent. Plaintiff's compensation under the employment contract was based solely on com-

---

[1] Plaintiff has not filed a cross-appeal; rather, plaintiff filed a direct appeal in Docket No. 219299.

missions from the sale of insurance contracts. Plaintiff was entitled to commissions from the initial sale of insurance contracts and also renewal commissions from the continuing premium payments made by his insured clients. Following a jury trial, judgment was entered on the verdict in plaintiff's favor in the sum of $45,882, plus costs and interest. In Docket No. 219299, plaintiff appeals the pretrial dismissal of count II of his amended complaint. In Docket No. 219330, defendant appeals the judgment. We affirm.

II

DOCKET NO. 219299

In count II of his amended complaint, plaintiff asserted a claim against defendant under the sales representative commissions act (SRCA), MCL 600.2961. Plaintiff claimed double damages and actual attorney fees pursuant to subsections 5 and 6 of the SRCA, MCL 600.2961(5) and (6). Defendant moved for summary disposition on count II of plaintiff's amended complaint on the ground that the SRCA did not apply to commissions realized from the sale of insurance policies. In granting defendant's motion for partial summary disposition, the lower court held that the terms "goods" and "product," as used in MCL 600.2961, relate to tangible goods only and not to intangible items such as insurance contracts. We agree with the trial court.

Recently, in *Mahnick v Bell Co*, 256 Mich App 154; 662 NW2d 830 (2003), our Court held that the SRCA did not apply to commissions allegedly owed to a construction project estimator, "because plaintiff was not a salesperson who sold 'goods,' and defendant did not

produce, sell, or distribute a 'product' as we interpret those terms as used in the act." *Id.* at 162.

In particular, the SRCA defines sales representative as follows:

> "Sales representative" means a person who contracts with or is employed by a principal for the solicitation of orders or sale of *goods* and is paid, in whole or in part, by commission. [MCL 600.2961(1)(e) (emphasis added).]

In *Mahnick,* our Court looked to dictionary definitions of the term "goods" and stated, " 'Goods' are defined as 'possessions, esp[ecially] movable effects or *personal property*' and as 'articles of trade; merchandise.' " *Mahnick, supra* at 162 quoting *Random House Webster's College Dictionary* (2001), p 565 (emphasis added). In addition to limiting the SRCA to sales representatives who engage in the solicitation of orders or sale of goods, the act also provides that the "principal" who may owe commissions under the act

> means a person that does either of the following:
>
> (i) Manufactures, produces, imports, sells, or distributes a *product* in this state.
>
> (ii) Contracts with a sales representative to solicit orders for or sell a *product* in this state. [MCL 600.2961(1)(d) (emphasis added).]

The *Mahnick* panel defined product as follows:

> The word "product" is defined as "a thing produced by labor," "the totality of goods or services that a company produces," and "material created or produced and viewed in terms of potential sales." [*Mahnick, supra* at 162, quoting *Random House Webster's, supra,* p 1055 (emphasis added).]

The sales article of the Uniform Commercial Code (article two) also defines the term "goods":

> "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (section 2107). [MCL 440.2105(1).]

In *Williams v Detroit Edison Co*, 63 Mich App 559, 564; 234 NW2d 702 (1975), our Court held that article two of the UCC did not apply to the sale of electricity because electricity was a service, not a good:

> At the outset of our discussion, we note that the "product" involved in this case is not a tangible item like an automobile, punch press or Coca-Cola bottle. Rather, it is a form of energy which in this case consisted of 7600 volts traveling in an uncovered line about 28 feet above the ground. Electricity is a service rather than a "good," . . . .

The issue whether an insurance contract is a "good" has never been decided in Michigan. However, all jurisdictions that have construed the UCC definition have held that insurance contracts are not goods. See *Bartley v Nat'l Union Fire Ins Co*, 824 F Supp 624 (ND Tex, 1992); *Elrad v United Life & Accident Ins Co*, 624 F Supp 742 (ND Ill, 1985); *Neilsen v United Services Automobile Ass'n*, 244 Ill App 3d 658; 612 NE2d 526 (1993); *Oxford Lumber Co v Lumbermens Mut Ins Co*, 472 So 2d 973 (Ala, 1985); *Cavanaugh v Nationwide Mut Ins Co*, 65 Ohio App 2d 123; 416 NE2d 1059 (1976). In *Elrad, supra*, which is represen-

tative of these authorities, the United States District Court for the Northern District of Illinois held:

*Count II: UCC Does Not Apply*

We must also reject Elrad's claim that United's alleged misrepresentations are subject to the UCC. He has cited no authority to support his novel assertion. He claims that United's conduct was unconscionable under Section 2-302 of the Code, but Article II applies only to the sale of goods. *See* Ill. Rev. Stat. ch. 26, para. 2-102 (1983). We disagree with Elrad's strained argument that a sale of life insurance is somehow the sale of a "good." *See* para. 2-105 (defining "good"). He also claims that United's conduct violated the "obligation of good faith" imposed by para. 1-203 of the UCC. But of course para. 1-203 applies only to a "contract or duty within" the UCC, and Elrad has not shown how his insurance contract is within the Code. While an insurance contract is a "commercial transaction," not all commercial transactions fall within the Code. Indeed,

"the . . . Code does not apply to the sale of realty (except fixtures), yet these are undeniably commercial matters. The Code does not apply to the formation, performance, and enforcement of insurance contracts. . . ."

White & Summers, *Uniform Commercial Code* (2d Ed. 1980) at 6. Finding no basis for holding that the UCC can apply to Elrad's claim, we dismiss Count II. [*Id.* at 744.]

The precise issue raised in the present case, whether the SRCA applies to commissions owed from the sale of insurance policies, was decided in *Kenebrew v Connecticut Gen Life Ins Co*, 882 F Supp 749 (ND Ill, 1995). There, the United States District Court for the Northern District of Illinois held that the substantially similar Illinois sales representative act did not apply to the sale of insurance policies. In so holding, the United States district court explained:

The terms "manufacture," "produce," "import," and "distribute" are identifiable with tangible, manufactured goods, not with intangible items or services such as insurance. For example, Webster's II dictionary (1994 edition) defines "manufacture" as: "to make or process (a raw material) into a finished product, esp. by a large-scale industrial operation." Similarly, "import" is defined as: "to bring or carry in from an outside source, esp. to bring in (goods) from a foreign country or trade source." An intangible item or service, such as sold by plaintiff simply does not fit within the plain meaning of the wording of the statute.

Moreover, while the purpose of the Act may have been to protect sales representatives from being terminated before they are paid the commissions owed to them, it does not mean that the legislature intended that the Act encompass all sales representatives. Had the Illinois legislature intended to include insurance sales within the Act, it is not evident in the restrictive language defining the term "product." The legislature can be presumed to have been aware of the various types of sales representatives that worked in Illinois, both at the time of the original enactment and when it was amended, and yet the debates continued to center around manufacturing representatives selling manufactured, tangible items that are capable of being produced, imported, or distributed. Additionally, the court notes that the insurance industry is highly regulated in Illinois. If the Illinois legislature intended to protect insurance sales representatives, it most likely would have done so specifically, rather than lumping such protection into a general statute. [*Id.* at 754.]

The final point, that in Illinois the insurance industry is highly regulated, is equally true in Michigan. See, generally, *Burnside v State Farm Fire & Cas Co*, 208 Mich App 422; 528 NW2d 749 (1995).

In the present case, in order for plaintiff to be a "sales representative" covered by the SRCA, he must be paid by commission and employed "for the solicitation of orders or sale of goods . . . ." MCL

600.2961(1)(e). Because plaintiff's commissions were based on his sales of insurance policies, not his solicitations, only the latter phrase "sale of goods" is at issue. Therefore, we need not decide whether the phrase "solicitation of orders" relates solely to the solicitation of "goods."[2]

The SRCA (1992 PA 125), which does not contain a definition of the term "goods," became effective on June 29, 1992. *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578; 624 NW2d 180 (2001). At that time and since January 1, 1964, the sales article of Michigan's Uniform Commercial Code has comprehensively defined the term "goods" for commercial sales governed by the UCC. We assume that when the Legislature enacted the SRCA in 1992, it was fully aware of this widely known and accepted definition of "goods." *Nummer v Dep't of Treasury*, 448 Mich 534, 553 n 23; 533 NW2d 250 (1995); *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993).

We conclude that plaintiff's arguments that his sales of insurance policies were the "sale of *goods*" and that defendant "[m]anufactures, produces, imports, sells, or distributes a *product* in this state," MCL 600.2961(1)(d)(i) (emphasis added), are contrary to the plain wording of the statute and the common and accepted meaning of its terms. *Kenebrew, supra.* For these reasons, we hold that the SRCA does not apply to commissions generated from the sale of insurance policies.

---

[2] We note, however, that because all jurisdictions have held that statutes like the SRCA apply to goods, not services, it is likely that the reference to solicitation of orders is limited to goods. It appears that the statute, when viewed as a whole, supports such a construction.

III

DOCKET NO. 219330

In its appeal, defendant argues that the jury's award of damages of $45,882 in renewal commissions is excessive because it is not supported by sufficient evidence. Defendant argues that its computer printout commission statement, produced pursuant to plaintiff's subpoena, established that the renewal commissions owed, if any, were only $25,771.12. However, defendant did not file a motion for a new trial or motion for remittitur in the trial court, MCR 2.611(E), and, therefore, has waived the issue. *Napier v Jacobs*, 429 Mich 222; 414 NW2d 862 (1987); *Cremonte v Michigan State Police*, 232 Mich App 240, 244-245; 591 NW2d 261 (1998).

Defendant's ancillary argument that the trial court committed error requiring reversal by admitting improper impeachment evidence is also not preserved. At trial, the objection made by defendant to the disputed testimony was based on the alleged improper foundation for the evidence and not on the ground asserted on appeal, which is alleged improper impeachment evidence. Accordingly, because defendant did not object at trial on the same ground that it presents on appeal, the issue is not preserved, MRE 103(a)(1). *Samuel D Begola Services, Inc v Wild Bros*, 210 Mich App 636, 642; 534 NW2d 217 (1995).

Affirmed.