*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* P. T. HALE, Minor.

UNPUBLISHED
June 16, 2022

No. 358208
Wayne Circuit Court
Family Division
LC No. 2004-427235-NA

Before: LETICA, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Respondent, the mother of the minor child, PH, appeals by right the trial court's order terminating her parental rights to PH. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from an incident in 2019 in which respondent severely physically abused SH, who was then 15 years old. On July 13, 2019, respondent and SH got into an argument, and respondent hit SH with a "back scratcher" on her bare shoulders and arms. Respondent also hit SH with a baseball bat, punched her in the head, and threatened her with a screwdriver. SH was eventually able to escape the house and call the police. SH was taken to Henry Ford Hospital where she was treated for a fractured wrist, multiple broken blood vessels in her eye, and a concussion.[1]

Testimony given in the proceedings below demonstrated that respondent had also hit and abused SH and her brother, TH, in the past. Respondent, however, denied such abuse, claiming she only spanked her children with a belt. She denied hitting SH with a baseball bat and claimed SH fractured her wrist by falling down the stairs. Respondent opined that the children were lying

---

[1] The assault resulted in respondent being criminally charged with first-degree child abuse, felonious assault, and aggravated domestic violence.

because they were influenced by respondent's adult children, who she claimed were angry with her.

On July 28, 2021, after a hearing and trial,[2] which was initially held in person, but later continued via Zoom because of the COVID-19 pandemic, the trial court found clear and convincing evidence of "historic severe physical abuse to all three children[.]" The trial court terminated respondent's parental rights to PH under MCL 712A.19b(3)(b)(*i*) (parent's act caused serious injury), MCL 712A.19b(3)(g) (failure to provide proper care and custody), MCL 712A.19b(3)(j) (reasonable likelihood of harm), and MCL 712A.19b(3)(k) (severe abuse).[3] Under MCL 712A.19b(3)(b)(*i*), the trial court found that respondent's act caused serious injury to SH requiring hospital care and that it was foreseeable that the children would suffer future abuse if returned to respondent. Under MCL 712A.19b(3)(g), the court found that respondent failed to provide proper care and custody and there was no reason to believe that proper custody would be provided in the future. Under MCL 712A.19b(3)(j), the court found that there was a reasonable likelihood that PH would be harmed if returned to respondent given her past conduct. And under MCL 712A.19b(3)(k), the trial court found that respondent's abuse of SH was severe and there was a reasonable likelihood that PH would be harmed if returned to respondent's care.

The trial court also found that it was in PH's best interests to terminate respondent's parental rights because of respondent's continuous and serious abuse. In addition, PH was doing well in his relative placement with his siblings, adoption was possible, PH wanted to remain in his current placement, and some visits with respondent had not gone well. The trial court did not terminate respondent's parental rights to SH or TH because of their relative ages at the time of the trial.

Respondent filed a claim of appeal with this Court on August 17, 2021. On December 13, 2021, respondent filed a motion to remand to the trial court for additional testimony regarding her assertion she was denied the effective assistance of counsel and due process. This Court denied the motion without prejudice "for failure to persuade the Court of the necessity of a remand at this time." *In re P T Hale, Minor*, unpublished order of the Court of Appeals, entered February 2, 2022 (Docket No. 358208). This appeal followed.

## II. DUE PROCESS

Respondent first argues that she was denied due process and a fair trial. Specifically, respondent claims that she was denied due process because: (1) her trial was not conducted in person; (2) there was not a full trial on the questions of jurisdiction and the statutory grounds; and

---

[2] We will refer to this combined trial and hearing as "the trial."

[3] The trial court's order does not identify which subsection of MCL 712A.19b(3)(k) the trial court found was established; however, the trial court found evidence of severe abuse, which supports a finding under (k)(*iii*). The petition sought termination under both (k)(*iii*) and (k)(*iv*) (loss or serious impairment of an organ or limb).

(3) she was unable to present a defense because the trial court precluded PH's testimony. We disagree.

As an initial matter, respondent has failed to preserve these arguments for appeal because she did not raise any of these objections in the trial court.[4] See *In re Killich*, 319 Mich App 331, 336; 900 NW2d 692 (2017) ("To preserve an issue for appellate review, the issue must be raised before, addressed by, and decided by the lower court."). Accordingly, we review respondent's issues raised on appeal for "plain error affecting substantial rights." *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citations omitted).

## A. TRIAL VIA ZOOM

Respondent first argues that she was denied due process by the trial court's decision to hold the trial via Zoom without obtaining a waiver of her right to an in-person trial. The record does not support this argument. Respondent's trial began in person before the COVID-19 pandemic began. During the pandemic and resulting court closures, respondent requested an in-person trial, and the proceedings were adjourned several times to accommodate her request. On March 29, 2021, the trial was set to be held in person. On that date, however, respondent was ill; thus, the proceedings were held via Zoom. The following exchange occurred on the record:

> *The Court*: And Ms. Hale, we were supposed to be in a courtroom today but I heard you're a little ill?
>
> *[Respondent]*: Yes, sir, I am.
>
> *The Court*: Okay. I won't ask what ails you in private and so we won't get into that but that's why we're doing this by video.
>
> *[Respondent]*: Okay.
>
> *The Court*: Okay. . . . Counselors, you waive, well, you waived your right to be in the courtroom and agree to do this hearing by video?
>
> * * *

---

[4] Although respondent's attorney called PH as a witness and argued that he should be allowed to testify, respondent never argued that she would be denied due process or the right to present a defense if PH did not testify. While "a party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court[,]" *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020), a party must object at trial to an evidentiary issue on the same ground that it presents on appeal, *Klapp v United Ins Group Agency (On Remand)*, 259 Mich App 467, 475; 674 NW2d 736 (2003).

*[Respondent's Attorney]*: Yes.

Respondent's claim that she did not waive her right to an in-person trial is, therefore, without merit. "Waiver is the intentional relinquishment or abandonment of a known right, as distinct from a litigant's failure to timely assert that right (forfeiture)." *In re Ferranti*, 504 Mich 1, 33; 934 NW2d 610 (2019) (quotation marks and citation omitted). "An affirmative expression of assent constitutes a waiver." *VHS Huron Valley Sinai Hosp v Sentinel Ins Co*, 322 Mich App 707, 716; 916 NW2d 218 (2018) (quotation marks and citation omitted). In this case, both respondent and her attorney affirmatively agreed to holding the trial via Zoom. Although respondent's consent to a trial via Zoom was not obtained at each subsequent trial date, she never raised the issue, and she had already effectuated a waiver. Accordingly, respondent has waived appellate review of this issue. *Id.*

But even if respondent had not waived the issue, the trial court's decision to conduct the trial via Zoom did not constitute plain error. "The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be at a meaningful time and in a meaningful manner." *In re Rood*, 483 Mich 73, 92; 763 NW2d 587 (2009) (quotation marks and citations omitted). "Due process requires fundamental fairness, which is determined in a particular situation first by considering any relevant precedents and then by assessing the several interests that are at stake." *Id.* (quotation marks and citation omitted). "In Michigan, procedures to ensure due process to a parent facing removal of his child from the home or termination of his parental rights are set forth by statute, court rule, [DHHS] policies and procedures, and various federal laws[.]" *Id.* at 93. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *In re Brock*, 442 Mich 101, 111; 499 NW2d 752 (1993) (quotation marks and citation omitted; alteration in original). During the COVID-19 pandemic, our Supreme Court entered various orders authorizing courts to conduct proceedings remotely for efficiency and safety. See Administrative Order No. 2020-6, 505 Mich cxxiv (2020); Amended Administrative Order No. 2020-17, 507 Mich lxvi (2021).

In this case, the trial was held via Zoom because respondent was ill, in compliance with Michigan Supreme Court Administrative Orders. As noted, respondent agreed on the record to holding the trial via Zoom, her attorney also agreed, and her attorney was able to call and question witnesses. Importantly, respondent fails to explain how holding the trial via Zoom affected the outcome of the proceedings. While she generally asserts that in-person hearings allow everyone to clearly hear the questions and testimony and allow for communication between attorney and client, she does not contend that anyone was unable to hear or effectively communicate. There is no indication that the fact that the trial was held by Zoom, rather than in person, had any effect on the trial court's ultimate decision to terminate respondent's parental rights to PH. See *In re Utrera*, 281 Mich App at 9 ("Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings."). Accordingly, the trial court did not plainly err when it conducted the trial by Zoom.

B. TESTIMONY REGARDING JURISDICTION AND STATUTORY GROUNDS

Next, respondent argues that she was denied due process when the trial court refused to hear additional testimony regarding jurisdiction and the statutory grounds for termination after SH's testimony. We are unpersuaded as the record does not support this claim of error.

The trial was held over eight days in 2020 and 2021. SH testified first and was permitted to testify regarding jurisdiction, statutory grounds for termination, and the best interest factors so that she would not have to be recalled as a witness and miss another day of school. On March 29, 2021, respondent's attorney objected to a question on the basis of relevance and the trial court sustained the objection. While ruling on the objection, the court commented that "this is in the best interest portion and no longer in the primary part of the trial where we're establishing the evidence," and stated that "everybody rested in terms of establishing the case now we're supposed to be just basically arguing what's best interest." Subsequently, the trial court stated that SH had been the first witness to testify as part of "the best interests portion . . . of the hearing." Respondent seizes upon this isolated comment to argue that she was improperly denied an opportunity to present additional testimony regarding jurisdiction and the statutory grounds for termination.

Preliminarily, we agree with respondent that the trial court incorrectly stated that the parties had rested. There is no indication in the record that the parties had rested with respect to the questions of jurisdiction and statutory grounds for termination, and had moved on to the best interests. The trial court's misstatement appears to have occurred because proceedings were spread over several days. Nonetheless, respondent's claim that she was denied a full trial on the questions of jurisdiction and the statutory grounds is without merit. Respondent has not identified any witness or evidence that she was prohibited from presenting regarding jurisdiction or statutory grounds for termination. Rather, after petitioner called its last witness, respondent's attorney called PH to testify and indicated that he would testify only about best interests. After the trial court denied respondent's request to call PH to testify, respondent was called as a witness. Respondent's testimony primarily related to the best interest factors, but also touched on subjects relevant to jurisdiction and the statutory grounds for termination. Respondent's attorney then called respondent's sister and niece to testify, and their testimony can similarly be characterized as relating to jurisdiction, statutory grounds, and best interests. Because respondent has not identified any witnesses or evidence regarding jurisdiction or statutory grounds for termination that she was precluded from presenting, she has failed to establish plain error affecting her substantial rights. See *In re Utrera*, 281 Mich App at 8-9.

## C. REFUSAL TO ALLOW CHILD TO TESTIFY

Lastly, respondent argues that she was denied the right to present a full defense when the trial court refused to allow PH to testify. Respondent's counsel called PH as a witness regarding best interests. PH's lawyer-guardian ad litem (LGAL) indicated that he did not want PH to testify, but that it was respondent's right to call him as a witness. After questioning by the trial court, both on and off the record, the court found that PH was not competent to testify. The following exchange evidences this conclusion:

*The Court*: Okay. Now I'm going to ask you to tell the truth, can you promise me you'll tell the truth if we ask you some questions?

*[PH]*: Huh?

*The Court*: If we ask you questions will you tell the truth?

*[PH]*: Um.

-5-

*The Court*: I can't hear you.

*[PH]*: Um.

*The Court*: So if I ask you questions will you tell the truth?

*[PH]*: I didn't do anything.

*The Court*: Okay. That's what I say all the time, too.

*[PH]*: Why you laughing?

*The Court*: Because I say the same thing all the time. I didn't do anything. That's what grownups say. You talking like a grownup. When you start talking like a grown up? Okay.

So you'll tell the truth if we ask you some questions?

*[PH]*: Huh?

*The Court*: Is that a yes, will you tell the truth or you don't know?

*[PH]*: I don't know.

The due-process right to present a defense includes the right to call witnesses. *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). The right is not absolute, however, and a party "must still comply with established rules of procedure and evidence designed to assure both fairness and reliability[.]" *Id.* (quotation marks and citation omitted). The competency of witnesses is governed by MRE 601, which states:

Unless the court finds after questioning a person that the person does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably, every person is competent to be a witness except as otherwise provided in these rules.

"The test of competency is thus whether the witness has the capacity and sense of obligation to testify truthfully and understandably." *People v Watson*, 245 Mich App 572, 583; 629 NW2d 411 (2001). This Court reviews "a trial court's determination of the competency of a witness for an abuse of discretion." *Id.*

Given the exchange between the trial court and PH, the court did not abuse its discretion by finding that he was not competent to testify. PH never articulated that he could tell the difference between the truth and a lie and never promised to tell the truth. PH's responses also demonstrated that he did not have the capacity to testify understandably. We conclude that the trial court properly complied with established rules of evidence and, therefore, respondent has not shown that she was denied the right to present a defense.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent next argues that she was denied the effective assistance of counsel because her trial attorney failed to object to each of the due process violations discussed in Part II of this opinion, by consenting to the Zoom trial without respondent's waiver, and by failing to correct the trial court regarding the status of the case. We disagree.

While respondent filed a motion to remand with this Court, she did not move for a new trial or evidentiary hearing in the trial court, and this Court denied her motion to remand. Therefore, our review of her ineffective assistance claims of counsel "is limited to mistakes apparent from the record." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "Although the constitutional provisions explicitly guaranteeing the right to counsel apply only in criminal proceedings, the right to due process also indirectly guarantees assistance of counsel in child protective proceedings." *In re CR*, 250 Mich App 185, 197; 646 NW2d 506 (2001), overruled on other grounds, *In re Sander*s, 495 Mich 394; 852 NW2d 524 (2014). "Thus, the principles of effective assistance of counsel developed in the context of criminal law apply by analogy in child protective proceedings." *Id*. at 197-198. "Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo." *In re Mota*, 334 Mich App 300, 318; 964 NW2d 881 (2020).

"The principles applicable to claims of ineffective assistance of counsel in the arena of criminal law also apply by analogy in child protective proceedings; therefore, it must be shown that (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent." *In re Martin*, 316 Mich App 73, 85, 896 NW2d 452 (2016). "To demonstrate prejudice, a party must show the existence of a reasonable probability that, but for counsel's error, the results of the proceeding would have been different, and a reasonable probability is one that is sufficient to undermine confidence in the outcome." *In re Mota*, 334 Mich App at 319.

With respect to the trial court's decision to conduct the trial using Zoom, there is no factual basis for respondent's claim because she consented to the Zoom trial. As discussed in Part II(A) of this opinion, respondent affirmatively agreed to holding the trial via Zoom when she responded, "Okay." Thus, respondent's attorney was not ineffective by also agreeing to the Zoom trial and failing to object. Further, respondent has not provided any basis for concluding that there is a reasonable probability that the result of the proceedings would have been different had an in-person trial been held. See *id*.

Next, with regard to the status of the case, respondent correctly asserts that trial counsel never objected to the trial court's misstatement that the parties had rested and moved on to consideration of best interests. However, as with her other claims, respondent has not demonstrated that she was prejudiced by counsel's failure to object. As previously discussed, respondent's attorney presented witnesses and evidence, and respondent has not identified any evidence regarding jurisdiction or the statutory grounds for termination that she was precluded from presenting or that otherwise would have affected the outcome. See *id*.

Finally, with respect to the trial court's refusal to allow PH to testify, respondent's attorney called him as a witness and argued why he should be allowed to testify. Ultimately, however, the trial court found that PH was not competent to testify. Respondent's counsel performed soundly, and respondent has not identified any argument that her attorney failed to make that would have

changed the outcome. See *id*. Accordingly, respondent has not demonstrated she received ineffective assistance of counsel.

## IV. STATUTORY GROUNDS FOR TERMINATION

Next, respondent contends that the trial court clearly erred by finding that statutory grounds for termination under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*iii*) were proven by clear and convincing evidence. We disagree.

"To terminate parental rights, a trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 635; 853 NW2d 459 (2014) (quotation marks and citation omitted). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination. The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014) (citations omitted). "A reviewing court must defer to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*iii*), which state:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

(k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

\* \* \*

(*iii)* Battering, torture, or other severe physical abuse.

Respondent does not dispute that the evidence demonstrated that she caused physical injury to or abuse of SH, MCL 712A.19b(3)(b)(*i*), that she failed to provide proper care or custody of PH, MCL 712A.19b(3)(g), or that her abuse of SH was severe physical abuse, MCL 712A.19(3)(k)(*iii*). Rather, she challenges the "in the future" requirement of each statutory ground, asserting that there was no evidence to show that PH will be injured or harmed in the future if returned to her, or that she will be unable to provide proper care or custody to PH in the future. We disagree.

SH testified that, during the 2019 incident, respondent hit her with a wooden back scratcher, tried to throw her down the stairs, hit her with a metal baseball bat, and punched her in the head, all of which resulted in multiple severe injuries, including a fractured wrist, broken blood vessels in her eye, and a concussion. She also testified that respondent had physically and verbally abused her, TH, and PH in the past, including hitting PH with the wooden back scratcher. Da'Jahonna Pinkins, the children's adult sister, and TH confirmed the verbal and physical abuse of both SH and TH. Pinkins had also observed respondent hit PH on his arms and legs with the wooden back scratcher. Respondent also admitted that she "spanked" SH and TH with a belt.

Under the doctrine of anticipatory neglect, "[h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re LaFrance*, 306 Mich at 730 (alteration in original). Given respondent's severe physical abuse of SH and prior physical and verbal abuse of SH and TH, the trial court did not clearly err by finding there was a reasonable likelihood that PH would be harmed if returned to respondent's care. Moreover, the testimony that respondent had hit PH with the wooden back scratcher, leaving temporary red marks, further supports the finding that PH was at risk of harm in respondent's care. Indeed, when denying that she ever hit PH, she stated that he was too young for spanking, which suggested that once PH is older, she will resort to physical abuse. While respondent contends that SH's testimony was inconsistent and not credible, the trial court cited her testimony in its findings, and we will defer to the trial court's credibility determinations. *Id*. at 723. Thus, the trial court did not clearly err by finding that statutory grounds for termination under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*iii*) were established by clear and convincing evidence.

Respondent also contends that termination was premature and she should have been provided with services and the opportunity to show her ability to parent. While this argument is not properly presented or preserved for appellate review, see *In re Utrera*, 281 Mich App at 8, a claim that reasonable services were not offered relates to the sufficiency of the evidence for termination, *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). Therefore, we will address this issue for a proper determination of the case.

-9-

"Reasonable efforts to reunify the child and family must be made in all cases except those involving aggravated circumstances under MCL 712A.19a(2)." *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019). MCL 712A.19a(2)(a) provides that reasonable efforts are not required if "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638." MCL 722.638 provides, in relevant part:

> (1) The department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, if 1 or more of the following apply:

> (a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

> * * *

> (*iii*) Battering, torture, or other severe physical abuse.

> * * *

> (2) In a petition submitted as required by subsection (1), if a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk, the department shall include a request for termination of parental rights at the initial dispositional hearing as authorized under section 19b of chapter XIIA of 1939 PA 288, MCL 712A.19b. [MCL 722.638(1)-(2).]

In this case, the evidence demonstrated that respondent engaged in severe physical abuse of SH. After a preliminary hearing held on October 28, 2019 and October 30, 3019, the court referee recommended that reasonable efforts for reunification were not required because the evidence demonstrated PH was subjected to "[e]xtreme physical abuse" by respondent. The trial court adopted the referee's recommendation. Moreover, the trial court later found that clear and convincing evidence supported termination of respondent's parental rights under MCL 712A.19b(3)(k)(*iii*), which expressly requires a finding of "[b]attering, torture, or other severe physical abuse." As explained earlier, the trial court did not clearly err by finding that clear and convincing evidence supported this statutory ground. Therefore, reasonable efforts toward reunification were not required in this case. MCL 712A.19a(2)(a).

In further support of her argument, respondent relies on *In re Newman*, 189 Mich App 61, 68, 70; 472 NW2d 38 (1991), in which this Court remanded to the trial court for reconsideration after the respondents were given an opportunity to demonstrate their parenting ability without the distraction of one of their children, who had behavioral issues, and after being given hands-on instruction regarding personal hygiene and household cleanliness. Thus, reasonable efforts were required to be made in that case and the petitioner's failure to make such efforts, when required, necessitated a remand. *Id*. at 70-71. Unlike this case, however, *In re Newman* did not involve an original petition seeking termination, nor did it involve allegations of severe physical abuse that

amounted to aggravated circumstances. Accordingly, we do not find that *In re Newman* controls the outcome of this case, and the trial court did not clearly err when it found there to be statutory grounds for termination.

## V. BEST INTERESTS

Lastly, respondent argues that the trial court clearly erred by finding that termination of her parental rights was in PH's best interests. Respondent focuses on the fact that she was willing to engage in voluntary services, PH was placed with a relative, and there existed a bond between her and PH. She also contends that any improvement made by PH during his stay with Pinkins was merely the result of his normal development with age. We disagree.

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713, citing MCL 712A.19b(5). This Court reviews "for clear error the trial court's determination regarding the children's best interests." *In re White*, 303 Mich App at 713.

"The trial court should weigh all the evidence available to determine the children's best interests." *Id*. The trial court "should consider a wide variety of factors," including: "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality," "the advantages of a foster home over the parent's home[,]" "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 713-714 (quotation marks and citations omitted).

We agree with respondent that there was evidence of a bond between her and PH. However, there was also evidence that respondent acted inappropriately during some visits with him, which caused him to become upset. Moreover, there was evidence that PH had been making improvements while in the care of Pinkins. The witnesses who testified attributed the improvements to his placement with Pinkins. For her part, Pinkins testified that while with her, PH was able to fully express himself, and he was more aware and active. TH testified that PH had grown since being in Pinkins's care and that, when he lived with respondent, all he did was cry. Although it is possible that some of PH's improvements were a result of his normal development with age, several other factors strongly weighed in favor of termination.

Not only were there concerns with the visits, but respondent had severely abused SH and also abused TH in the past. While respondent claims that PH was not subject to the same treatment, SH and Pinkins testified that respondent had hit him with the wooden back scratcher, leaving temporary red marks on his body. Thus, PH's physical safety was at risk in respondent's care. In contrast, the testimony demonstrated that his placement with Pinkins provided him with safety, security, and permanency, given that she was willing to provide him long-term care. Although a child's placement with relatives weighs against termination, PH's safety from physical harm outweighed such a consideration.

-11-

Respondent argues that she was willing to engage in voluntary services. On March 29, 2021, respondent testified that she had asked the foster care worker for a referral for services, but respondent had not yet heard back. On April 29, 2021, respondent testified that she had enrolled in an anger management class, but it had not yet started. While these actions showed some desire by respondent to address her anger issues, she had the opportunity to participate in voluntary services much earlier and failed to do so. On November 5, 2020, the foster care worker testified that respondent could participate in anger management therapy and parenting classes if she chose to do so. Respondent only actually enrolled in the class when the trial was nearing the end. Moreover, given the evidence of respondent's history of inflicting punishment and abuse, we agree with the LGAL that respondent was not likely to benefit from services, particularly in a reasonable amount of time.

Finally, while there was no express testimony that PH preferred to live with Pinkins, the evidence supported this inference. In particular, TH testified that PH was happier with Pinkins, and that he was not usually in a good mood after visits with respondent. Thus, the trial court's finding that PH "wishes to remain in his current placement" was not clearly erroneous. Considering all of the evidence, the trial court did not clearly err by finding by a preponderance of the evidence that termination of respondent's parental rights was in PH's best interests.

Affirmed.

/s/ Anica Letica
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan