MAHNICK v BELL COMPANY

Docket No. 230718. Submitted September 10, 2002, at Detroit. Decided April 3, 2003, at 9:05 A.M.

Michael C. Mahnick brought an action in Macomb Circuit Court against the Bell Company, alleging, in part, breach of contract and violation of the sales representative commissions act (SRCA), MCL 600.2961, after the defendant, a construction company, did not pay the plaintiff, its chief project estimator, bonuses under an oral contract with the defendant. The court, John B. Bruff, J., granted summary disposition in favor of the defendant on all claims. The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court erred in granting summary disposition regarding the plaintiff's common-law claim of breach of contract because the oral contract was ambiguous with regard to the method to be used in calculating the plaintiff's bonuses, and the amount and timing of such payments. Because the contract was subject to more than one reasonable interpretation, factual development was necessary to determine the intent of the parties, and summary disposition was inappropriate.

2. The trial court did not err in granting summary disposition regarding the plaintiff's claim under the SRCA because the plaintiff was not a salesperson who sold "goods" and the defendant did not produce, sell, or distribute a "product" as those terms are used in the SRCA. Rather, the defendant, as a general contractor, provides professional construction services, and the plaintiff, as a project estimator, assisted the defendant's effort to bid to provide its services. Services do not constitute goods or products within the meaning of the SRCA.

Reversed in part, affirmed in part, and remanded for further proceedings.

*Law Offices of John F. Harrington* (by *John F. Harrington*) for the plaintiff.

*Honigman Miller Schwartz and Cohn* (by *Stuart H. Teger*) for the defendant.

Before: SMOLENSKI, P.J., and TALBOT and WILDER, JJ.

PER CURIAM. Plaintiff appeals as of right from an order granting summary disposition in favor of defendant. We reverse in part, affirm in part, and remand the case to the trial court.

Plaintiff's complaint alleged three separate causes of action: common-law breach of contract, an action under the sales representative commissions act (SRCA), MCL 600.2961, and unjust enrichment. Defendant is engaged in the construction industry as a general contractor and employed plaintiff as a project estimator in October 1996. Plaintiff later became chief project estimator for the company. As a project estimator, plaintiff would estimate the cost of completing a construction project on which defendant intended to bid. Plaintiff's estimate would serve as the basis of a bid submitted by defendant on competitively bid construction projects. Plaintiff's first full year of employment was 1997. Plaintiff alleges that sometime before the beginning of 1997, the parties reached an oral agreement regarding plaintiff's 1997 "compensation package." According to plaintiff, defendant agreed to pay plaintiff a regular salary, plus a "bonus" of four percent of project revenues generated by plaintiff that exceeded $600,000. Plaintiff claims that project revenue he generated in 1997 totaled $724,514 and that, therefore, four percent of $124,514 entitled him to a bonus of $4,981. Plaintiff alleges that defendant paid him an even $5,000.[1]

---

[1] Defendant contends that it paid plaintiff a bonus of $5,177.41 in 1997, but denies plaintiff's description of the manner in which plaintiff's bonus was to be determined. According to defendant, bonuses were discretionary and were based on a number of factors. First, plaintiff was required to meet his revenue goal for the year. These goals were established by the

Plaintiff further alleges that at the end of 1997, the parties agreed to another compensation package for 1998. Plaintiff contends that under this package, he was to receive a bonus of four percent on project revenues generated through his efforts that exceeded $800,000. On the other hand, defendant contends that the 1998 goal was set at $1 million. Plaintiff claims that while he was entitled to a bonus of $41,475 at the end of 1998, based on project revenues of $1,836,871, defendant paid him only $10,000. Plaintiff also asserts that when he received his bonus payment, defendant informed him that the 1998 compensation agreement was being retroactively amended such that only construction projects generated by plaintiff that were both awarded and *completed* in 1998 were eligible for bonus consideration. According to plaintiff, he never received a schedule outlining how defendant calculated the $10,000 he was paid for his 1998 bonus.

Finally, plaintiff asserts that defendant told him that his compensation package for 1999 would include a new two-tiered structure that awarded him a bonus of two percent of plaintiff's completed project fees in excess of $1.2 million, and four percent of

---

company. Whether the goal had been met was determined by calculating the "buy-out profit" of the jobs plaintiff estimated. To calculate the "buy-out profit," plaintiff's job estimates were compared to the expenses (contracts and purchase orders) actually incurred on each job. If plaintiff accurately estimated which trades were required to complete the job and also properly estimated the cost of the work, the accumulated "buy-out profit" from each job should theoretically meet or exceed the goal, and a bonus for plaintiff would be considered. If plaintiff met his revenue goal, then other factors including plaintiff's interaction with customers and other employees, whether he has good attendance and works a full day consistently, and whether personal matters interfered with his daily performance were considered in determining the amount of the bonus. Defendant disputes plaintiff's assertion that plaintiff's bonus was to be determined by a flat percentage of revenue that exceeded the goal.

plaintiff's completed project fees in excess of $1.4 million. Henry Bell, defendant's owner, stated that he thought the 1999 structure was not two-tiered, but instead was a "straight shot." Plaintiff claims that in August 1999, defendant informed him that the 1999 bonus or commission would be calculated in a manner different than what plaintiff asserts the contract provided. Thereafter, and as a result, plaintiff voluntarily left defendant's employ.

On appeal, plaintiff first argues that the trial court erred by granting summary disposition of his common-law breach-of-contract claim in favor of defendant. We agree. A trial court's grant or denial of a motion for summary disposition is reviewed de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). In reviewing a decision by the trial court on a motion for summary disposition under MCR 2.116(C)(10), this Court considers the affidavits, pleadings, depositions, admissions, and documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Morales v Auto-Owners Ins Co*, 458 Mich 288, 294; 582 NW2d 776 (1998). A motion for summary disposition under MCR 2.116(C)(10) is properly granted if, there being no genuine issue of material fact, the moving party is entitled to judgment as a matter of law. *Id.* We also review de novo on appeal questions of law, *Universal Underwriters Ins Co v Kneeland*, 464 Mich 491, 496; 628 NW2d 491 (2001), including whether a trial court has correctly interpreted a statute. *Rickwalt v Richfield Lakes Corp*, 246 Mich App 450, 468; 633 NW2d 418 (2001); *Saginaw Co v John Sexton Corp of Michigan*, 232 Mich App 202, 214; 591 NW2d 52 (1998).

In its written opinion dismissing plaintiff's breach-of-contract claim, the trial court stated:

> [T]he court is satisfied that the claim for breach of contract should be dismissed inasmuch as plaintiff did not have an absolute entitlement to a bonus or to the claimed bonus amounts. In this regard, the Court points out that a bonus constitutes extra compensation that is awarded to an employee at the employer's discretion pursuant to a written policy or contract. *Gravely v Pfizer, Inc*, 170 Mich App 262; 427 NW2d 613 (1988).

Plaintiff argues that *Gravely* is inapplicable to the instant case. We agree. In *Gravely*, this Court determined that the incentive compensation sought by the plaintiff was a bonus falling under the definition of "fringe benefits" that were to be paid in compliance with the terms of her employer's written policy, MCL 408.473, rather than a commission falling under the definition of "wages" that her employer must pay under the wages and fringe benefits act (WFBA), MCL 408.471(f); MCL 408.472.

In the instant case, however, plaintiff has asserted a common-law breach-of-contract claim and did not bring an action under the WFBA. Because the statutory remedies established by the WFBA are cumulative to any common-law remedy for breach of contract, *Murphy v Sears, Roebuck & Co*, 190 Mich App 384, 388; 476 NW2d 639 (1991), the statutory scheme of the WFBA does not control the resolution of this case. *Id.* Therefore, the trial court erred when it applied *Gravely, supra*, to this action. Instead, it should have applied the common-law principles governing a claim for breach of contract.

Under the common law, the main goal in the interpretation of contracts is to honor the intent of the

parties. *Mikonczyk v Detroit Newspapers, Inc,* 238 Mich App 347, 349-350; 605 NW2d 360 (1999). The court must look for the intent of the parties in the words used in the contract itself. *UAW-GM Human Resource Center v KSL Recreation Corp,* 228 Mich App 486, 491; 579 NW2d 411 (1998). When contract language is clear, unambiguous, and has a definite meaning, courts do not have the ability to write a different contract for the parties, or to consider extrinsic testimony to determine the parties' intent. *Id.* The determination of whether contract language is clear and unambiguous is a question of law. *Id.* If a contract is subject to two interpretations, factual development is necessary to determine the intent of the parties and summary disposition is inappropriate. *Meagher v Wayne State Univ,* 222 Mich App 700, 722; 565 NW2d 401 (1997). When contractual language is clear, its construction is a question of law for the courts. *Id.* at 721. Courts must not create ambiguity where it does not exist. *UAW-GM Human Resource Center, supra* at 491. If the meaning of the language is unclear, the trier of fact must determine the intent of the parties. *Id.* at 492.

Here, ambiguities exist in this oral contract regarding the method used to determine whether plaintiff was entitled to a bonus, and, if he was entitled, the amount and timing of any such payments. Because the contract is subject to more than one reasonable interpretation, factual development is necessary to determine the intent of the parties and summary disposition is inappropriate.[2] *Meagher, supra* at 722.

---

[2] Although it is unclear from the record whether this oral contract meets the requirements of the statute of frauds, MCL 566.132(1)(a), defen-

Plaintiff next argues that the trial court erred in dismissing his cause of action under the SRCA. In particular, plaintiff asserts that he was a "sales representative" within the meaning of the SRCA, that defendant was a "principal" within the meaning of the SRCA, and that the pay incentives or bonuses in question are "commissions" within the meaning of the SRCA. We disagree.

MCL 600.2961 provides, in relevant part:

> (1) As used in this section:
>
> (a) "Commission" means compensation accruing to a sales representative for payment by a principal, the rate of which is expressed as a percentage of the amount of orders or sales or as a percentage of the dollar amount of profits.
>
> (b) "Person" means an individual, corporation, partnership, association, governmental entity, or any other legal entity.
>
> *          *          *
>
> (d) "Principal" means a person that does either of the following:
>
> (i) Manufactures, produces, imports, sells, or distributes a product in this state.
>
> (ii) Contracts with a sales representative to solicit orders for or sell a product in this state.
>
> (e) "Sales representative" means a person who contracts with or is employed by a principal for the solicitation of orders or sale of goods and is paid, in whole or in part, by commission. Sales representative does not include a person who places an order or sale for a product on his or her own account for resale by that sales representative.

---

dant did not assert the statute of frauds as an affirmative defense in its answer to plaintiff's complaint. Therefore, we need not resolve this issue.

(2) The terms of the contract between the principal and sales representative shall determine when a commission becomes due.

(3) If the time when the commission is due cannot be determined by a contract between the principal and sales representative, the past practices between the parties shall control or, if there are no past practices, the custom and usage prevalent in this state for the business that is the subject of the relationship between the parties.

Whether the SRCA is applicable to the circumstances in this case is a matter of statutory interpretation, and is therefore a question of law that we decide de novo. *Stanton v Battle Creek*, 466 Mich 611, 614; 647 NW2d 508 (2002), citing *In re MCI Telecom*, 460 Mich 396, 413; 596 NW2d 164 (1999). As our Supreme Court stated in *Stanton*:

The primary rule of statutory interpretation is that we are to effect the intent of the Legislature. *Wickens v Oakwood Healthcare System*, 465 Mich 53, 60; 631 NW2d 686 (2001). To achieve this task, we must first examine the statute's language. *Id.* If the language is clear and unambiguous, we assume the Legislature intended its plain meaning, and the statute is enforced as written. *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001). [*Id.* at 615.]

"Where ambiguity exists, however, this Court seeks to effectuate the Legislature's intent through a reasonable construction, considering the purpose of the statute and the object sought to be accomplished." *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 153; 627 NW2d 247 (2001). Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. MCL 8.3a; *Robertson v DaimlerChrysler Corp*, 465 Mich 732,

748; 641 NW2d 567 (2002). Nothing should be read into a statute that is not within the manifest intent of the Legislature as indicated by the act itself. *Lesner v Liquid Disposal, Inc*, 466 Mich 95, 101; 643 NW2d 553 (2002).

We conclude that the SRCA is inapplicable to the employment relationship between plaintiff and defendant because plaintiff was not a salesperson who sold "goods," and defendant did not produce, sell, or distribute a "product," as we interpret those terms as used in the act. Neither of these terms is defined in the act. If a term is not expressly defined in a statute, this Court may consult dictionary definitions in construing the term according to its plain and ordinary meaning. *Stanton, supra* at 617.

The word "product" is defined as "a thing produced by labor," "the totality of goods or services that a company produces," and "material created or produced and viewed in terms of potential sales." *Random House Webster's College Dictionary* (2001), p 1055. "Goods" are defined as "possessions, esp[ecially] movable effects or personal property" and as "articles of trade; merchandise." *Id.* at 565. The fair and natural import of the terms employed, in view of the subject matter of the law, should govern. *In re Wirsing*, 456 Mich 467, 474; 573 NW2d 51 (1998). Here, applying the fair and natural import of the SRCA's use of the terms "goods" and "product" to the facts of this case, we find that plaintiff, as a project estimator, was not engaged in soliciting for the order or sale of goods on behalf of the defendant, and that defendant, as a general contractor, was not engaged in the manufacture, production, importation, sale, or distribution of products. Rather, as a general contrac-

tor, defendant provides professional construction *services* to the project owner. As a project estimator, plaintiff assisted defendant's efforts to bid to provide *services* to the project owner by providing a professional service to defendant. Services do not constitute goods or products within the meaning of the SRCA.[3]

While not directly controlling the conclusions we reach in this case, this Court's decision in *Frommert v Bobson Constr Co*, 219 Mich App 735; 558 NW2d 239 (1996), is highly instructive. In *Frommert*, the owner of a veterinary clinic hired the defendant contractor to replace a leaky roof. The new roof also leaked, and after several efforts to repair the roof failed, the plaintiff in *Frommert* filed an action for breach of warranty and breach of contract against a contractor. The trial court granted summary disposition to plaintiff on the basis that the contract was for the sale of goods and subject to the four-year statute of limitations provided by the Uniform Commercial Code, MCL 440.2725. This Court reversed, finding instead that the contract was one for services rather than goods, and that the six-year statute of limitations provided in MCL 600.5807(8) applied:

> [W]e conclude that the contract between the parties was predominately one for services, rather than one for a sale of goods . . . . According to the contract and a letter from Copeland, defendant was to remove the old roof and replace it with a new Bobson Polybond roofing system with an R-25 insulation value. In this case, it is difficult to conceive of the goods being supplied, the roofing material, as the predominant purpose of the contract. That is, plaintiff

---

[3] The word "services" is defined to mean "the performance of any duties or work for another," "supplying services rather than products or goods." *Random House Webster's College Dictionary* (2001), p 1202.

needed to have a new roof installed, and *the service of removing the old roof and replacing it with the new roofing system was clearly the predominant purpose of the contract.* [*Frommert, supra* at 738-739 (emphasis added).]

Similarly, as a general contractor, defendant principally provides services to project owners. The fact that the end result of those services may be a product such as a building or a building addition does not change the essential character of defendant's work as a service provider, or change the character of plaintiff's work to estimate jobs for defendant into a sale of a good. Thus, for the reasons discussed herein, we conclude that the trial court correctly granted defendant's motion for summary disposition of plaintiff's claims under the SRCA.

Defendant also argues on appeal that the trial court properly granted summary disposition regarding plaintiff's claim of unjust enrichment. Because plaintiff did not raise this issue on appeal it is not preserved for our review, and we decline to address it. *Blackwell v Citizens Ins Co*, 457 Mich 662, 673-674; 579 NW2d 889 (1998).

We reverse the trial court's dismissal of plaintiff's claim for breach of contract, affirm the trial court's dismissal of plaintiff's claims under the SRCA, and remand the case to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.