# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT ROHRER and THERESA ROHRER,

      Plaintiff-Appellees,

v

CITY OF EASTPOINTE,

      Defendant-Appellant.

UNPUBLISHED
October 30, 2018

No. 338224
Macomb Circuit Court
LC No. 2015-004388-CK

Before: M. J. KELLY, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

Defendant, City of Eastpointe, appeals by leave granted[1] the trial court order denying its motion for summary disposition. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

In December 1996, plaintiff, Robert Rohrer, retired from his job as one of the City's police officers. At the time of his retirement, Rohrer's pension and retiree healthcare benefits were governed by a collective bargaining agreement (the CBA) between the City and the Police Officers Association of Michigan. Under the CBA, Rohrer and his spouse are entitled to receive healthcare benefits. Although Rohrer was unmarried at the time he retired, he married Theresa Rohrer (Theresa) approximately six months after his retirement.

Rohrer testified that before he retired, he discussed the possibility that he was going to marry with a few City employees, who advised him that he would have to wait until he married to add Theresa to his insurance. He stated that there was not any timeframe placed on when he had to marry in order to add Theresa to the insurance, and he did not ask about it further. Following his marriage to Theresa, Rohrer sought health insurance for Theresa from the City, which denied the request. Rohrer appealed the decision to the City's pension board, which held a special meeting in September 1997. In October 1997, the board denied Rohrer's request to include Theresa as a dependent entitled to health care benefits under the CBA.

---

[1] *Rohrer v City of Eastpointe*, unpublished order of the Court of Appeals, entered September 13, 2017 (Docket No. 338224).

Approximately 18 years later, in October 2015, Rohrer sent the City's finance director a letter formally requesting health insurance for Theresa. The City responded that Theresa was not eligible for coverage and denied the request. Thereafter, in December 2015, the Rohrers filed their complaint in this case, asserting claims for breach of contract and declaratory relief. The City moved for summary disposition in February 2017, arguing that the Rohrer's claim was barred by the applicable statute of limitations, and that, under the plain language of the CBA, Theresa did not have vested retirement healthcare benefits because she was not married to Rohrer at the time he retired. The City stressed that according to the language used in the CBA, only dependents of retirees who "existed" at the time of retirement were eligible for healthcare benefits, and it relied on extrinsic evidence from Rohrer's pension file to bolster its interpretation. The trial court, however, determined that the CBA provided that Rohrer's "spouse" was entitled to retiree healthcare and that there was no language mandating that Rohrer had to be married to his spouse at the time of retirement in order for his spouse to receive benefits. Therefore, relying on this Court's decision in *Nightingale v Twp of Shelby*, unpublished per curiam opinion of the Court of Appeals, issued May 27, 2014 (Docket No. 314491),[2] the trial court held that Theresa was eligible for benefits under the CBA. The court also rejected the City's statute-of-limitations defense, finding that under *Adams v Detroit*, 232 Mich App 701; 591 NW2d 67 (1998), a plaintiff could proceed against a defendant for all benefits that had been withheld for up to six years before the date the claim was filed.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

The City argues that the trial court erred by denying its motion for summary disposition. This Court reviews de novo a trial court's decision to deny a party's motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). In addition, we review de novo whether the statute of limitations bars a claim. *Stenzel v Best Buy Co, Inc*, 320 Mich App 262, 274; 906 NW2d 801 (2017). "Interpretation of a collective-bargaining agreement, like interpretation of any other contract, is also a question of law also subject to review de novo." *Arbuckle v Gen Motors LLC*, 499, 531; 885 NW2d 232 (2016). "A reviewing court interprets a collective-bargaining agreement 'according to ordinary principles of contract at law . . . .' " *Id*. at 531-532, quoting *M & G Polymers USA, LLC v Tackett*, 574 US ___, ___; 135 S Ct 926, 937; 190 L Ed 2d 809 (2015).

### B. ANALYSIS

"[T]he main goal in the interpretation of contracts is to honor the intent of the parties." *Mahnick v Bell Co*, 256 Mich App 154, 158-159; 662 NW2d 830 (2003). The best evidence of the parties' intent is the words used in the contract. *UAW-GM Human Resource Ctr v KSL*

---

[2] Unpublished opinions are not binding, MCR 7.215(C)(1); however, they can be instructive or persuasive. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).

*Recreation Corp*, 228 Mich App 486, 491; 579 NW2d 411 (1998). "When contract language is clear, unambiguous, and has a definite meaning, courts do not have the ability to write a different contract for the parties, or to consider extrinsic testimony to determine the parties' intent." *Mahnick*, 256 Mich App at 159. If a contract allows for two or more reasonable interpretations or if provisions in the contract cannot be reconciled with each other, then the contract is ambiguous. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003). However, "[i]f the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous." *Meagher v Wayne State Univ*, 222 Mich App 700, 722; 565 NW2d 401 (1997). "Courts are not to create ambiguity where none exists." *UAW-GM Human Resource Ctr*, 228 Mich App at 491. Thus, a court may not rewrite clear and unambiguous contract language under the guise of interpretation. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 354; 596 NW2d 190 (1999).

The relevant language of the CBA is as follows:

10.5: <u>Medical Insurance—Retirees</u>. In accordance with the specific provisions of this section, the City shall pay the premium for the Retiree's health insurance coverage with the choice of specific benefit plans as made available in Section 23.11, Paragraph (C) of this agreement.

\* \* \*

D. Medical insurance as above described shall first be provided when either the retiree and/or his/her surviving dependents begin receiving retirement benefits from the City of Eastpointe. This medical insurance shall be provided for the retiree and his/her surviving dependents for as long as said dependents continue to receive retirement benefits from the City of Eastpointe.

E. If the surviving spouse marries, all medical insurance benefits shall cease to be provided.

\* \* \*

[23.10] C. <u>Post-Retirement Health Insurance Coverage</u>:

Retirants and beneficiaries of retirants hired before December 9, 1991 shall receive City-paid health insurance coverage by choosing one of the following benefits plans:

(1) HCN (Blue Cross HMO—Health Care Network)

(2) Dimension III (Blue Cross Plan with Co-pays and deductibles)

(3) HAP (HMO—Health Alliance Plan)

(4) Blue Cross-Blue Shield MVF1, MM, ML, $5.00 prescription rider.

Retirants and beneficiaries of retirants hired after December 9, 1991, shall have the choice of the plans set forth in Paragraphs 1 through 3 immediately above. Retirants hired after December 9, 1991 who have established residency outside the State of Michigan shall, in addition to the choice of plans set forth in Paragraphs 1 through 3 immediately above, have the additional choice of Blue Cross/Blue Shield MVF1, MM, ML, $5.00 prescription rider. The choice of Blue Cross/Blue Shield MVF1 shall cease to be available if the retirant and beneficiary of said retirant hired after December 9, 991 reestablishes residency in the State of Michigan. The eligibility for and the amount of City payment of premium for the above insurance plans shall be in accordance with Section 10.5 of this Agreement.

The City first asserts that, under this language, a retiree's spouse may only receive healthcare benefits if he or she was married to the retiree at the time the retiree retired. In support, it relies on a line of cases addressing how to determine whether healthcare benefits under collective-bargaining agreements are vested for retirees and their spouses. For example, in *Tackett*, 574 US at ___; 135 S Ct at 937, the United States Supreme Court stated that when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties to the contract intended the benefits to vest for life. And in *Gallo v Moen, Inc*, 813 F3d 265, 268 (CA 6, 2016), the Sixth Circuit held that durational clauses in collective-bargaining agreements should be considered when deciding how long a company has committed to providing healthcare benefits to eligible individuals. Then, in *CNH Industrial v Reese*, ___ US ___; 138 S Ct 761, 766; 200 L Ed 2d 1 (2018), the United States Supreme Court clarified "when a collective-bargaining agreement is merely silent on the question of vesting, other courts would conclude that it does *not* vest benefits for life," and that "when an agreement does not specify a duration for health care benefits in particular," a reviewing court should apply the general durational clause. In relying on those cases, the City erroneously conflates legal challenges to the *duration* of healthcare benefits with questions about an individual's *eligibility* for benefits. Each of those cases, however, dealt with how long benefits had to be provided to eligible individuals, and none of them addressed whether an individual was eligible for benefits in the first instance. As a result, they are inapplicable to the issue in this case, which only presents a question about Theresa's eligibility.[3]

---

[3] Even if *Tackett*, *Gallo*, and *Reese* were applied here, they would not support the City's position. The general durational clause in the CBA provides that the CBA is in effect until June 30, 1997. However, section 10.5 expressly provides that the retiree healthcare "shall be provided for the retiree and his/her surviving dependents *for as long as said dependents continue to receive retirement benefits from the City of Eastpointe*." It is undisputed that Rohrer's retirement benefits are for the duration of his life. Indeed, as pointed out by the City, the election of retirement allowance form that Rohrer signed on December 19, 1996, shortly before his retirement, stated that he elected to receive the "regular pension plan," which provided for a maximum pension "during [Rohrer's] lifetime," with no pension to be paid to his beneficiary after his death. Accordingly, as applied to this case, under principles of ordinary contract interpretation, *Tackett*, 574 US at ___; 135 S Ct at 933, generally the healthcare benefits

The City also fails to identify any language rendering the CBA ambiguous so as to allow for the admission of the extrinsic evidence in Rohrer's pension file which, supposedly, demonstrates as a matter of law that the parties intended the CBA to only provide healthcare benefits for an individual who was a spouse at the time of retirement. The language in the CBA is not ambiguous. It provides in § 10.5 that the City shall provide retiree healthcare benefits for the retiree and his or her "dependents" for as long as the retiree is receiving retirement benefits. Moreover, although clumsily worded, it is clear that the term "dependents" includes a retiree's spouse. Again, the pertinent language provides that "medical insurance as described above shall first be provided when either the retiree and/or his/her surviving dependents begin receiving retirement benefits from the City of Eastpointe." And § 10.5(E) provides that the retiree's spouse's benefits "shall cease" if that spouse remarries. Thus, because an interpretation of "surviving dependents" that does not include a retiree's spouse would give no effect to the entirety of § 10.5(E), we must interpret the term "surviving dependent" to include a retiree's spouse. *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010) (stating that contracts must be construed so as to give effect to every word, clause, and phrase); see also *Klapp*, 468 Mich at 468 (stating that courts must "avoid an interpretation that would render any part of the contract surplusage or nugatory").

Additionally, the language only provides that the benefits "shall first be provided" when the retiree or his surviving dependents first begin receiving retirement benefits from the City. The language "shall first be provided" contemplates that the *first* time the benefits shall be provided is when the City begins to provide retirement benefits to the retiree and his surviving dependents. It does not state that the *only* time that such benefits will be provided is at the exact moment that the retiree begins receiving retirement benefits. If there was any doubt on this point, section 10.5(F) expressly provides that if the retiree is eligible for equal or better medical insurance with a different employer, then the City's obligation to pay the premiums will terminate *until* the retiree is no longer eligible for the other insurance.

In sum, applying the plain language of the contract, we conclude that the CBA is not ambiguous because it is not susceptible to more than one meaning. Instead, it provides that a retiree's spouse shall receive healthcare benefits under the CBA, and it places no limitations on when an individual must become a spouse in order to be eligible as a "spouse" under the contract. Accordingly, the trial court did not err by determining that Theresa was eligible for retiree healthcare benefits under the CBA.[4]

---

provided for in the CBA vested in both Rohrer and his or her beneficiaries (including his spouse) for the duration of Rohrer's lifetime.

[4] When interpreting the CBA in this case, the trial court relied on this Court's decision in *Nightingale*. In that case, the Township of Shelby sought to deny healthcare to the plaintiffs' spouses on the grounds that they were not spouses at the time of retirement. *Nightingale*, unpub op at 1. The CBA in that case provided, "Upon the regular retirement . . . of any full time Employee pursuant to Act 345, the Employer shall provide hospitalization insurance coverage for such Employee, his spouse, and dependent children provided retiree or spouse does not have

Next, the City argues that regardless of how the CBA is interpreted, the Rohrers' claim is barred by the applicable statute of limitations. This Court, however, addressed this issue in *Adams*, 232 Mich App at 705. In that case, the plaintiffs argued that the statute of limitations did not bar their claim for retiree healthcare benefits because the benefits were akin to an installment contract, with "each deficient periodic payment constituting a separate breach of contract actionable for the following six years." *Id*. at 704-705. This Court agreed, reasoning:

> Plaintiffs rely on *Harris* [*v Allen Park*, 193 Mich App 103, 107; 483 NW2d 434 (1992)], where, under facts similar to those of the instant case, this Court ruled as follows:
>
>> [N]ot all individuals who retired from the system more than six years before this action was filed should have their claims barred. Pension benefits are similar to installment contracts and the period of limitations runs from the date each installment is due. Therefore, every periodic payment made that is alleged to be less than the amount due plaintiffs . . . constitutes a continuing breach of contract and the limitation period runs from the due date of each payment.
>
> The trial court distinguished the instant case from *Harris* in that *Harris* concerned periodic payments of a monetary benefits, whereas the instant case concerned premiums to be paid directly to an insurance carrier. We agree with plaintiffs that *Harris* is applicable to this case, the incidental factual distinction notwithstanding. There is no meaningful difference, for purposes of likening a retirement plan to an installment contract, between benefits paid directly to the retiree and benefits paid to a third party for services to be rendered to the retiree.

Here, as in *Adams*, the benefits at issue are retirement healthcare benefits. And, like the benefits in *Adams*, they are properly likened to an installment contract, which means that each deficient payment of benefits starts a new six-year breach of contract action. Thus, the Rohrers' claim is not barred by the statute of limitations.

_____

such coverage provided by other employment." *Id*. at unpub op 1-2. This Court concluded that the above language unambiguously provided healthcare benefits to any individual married to the retired employee regardless of whether the marriage occurred before or after that employee retired. *Id*. at unpub op at 3-4.

The City argues that the trial court erred by relying on *Nightingale* because *Nightingale* did not address whether the spouse's healthcare benefits were vested under the framework set forth in *Tacket*, *Gallo*, and *Reese*. But, again, the issue in this case, like the issue in *Nightingale*, involves whether a retiree's spouse is *eligible* for benefits. Thus, the issue is unrelated to *how long* those benefits must be provided for individuals who are eligible for benefits.

Affirmed.  The Rohrers may tax costs as the prevailing parties.  MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Karen M. Fort Hood