*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALLEN PARK RETIREES ASSOCIATION, INC.
and JANICE K. PILLAR, Personal Representative of
the ESTATE OF RUSSELL PILLAR,

Plaintiffs-Appellees,

v

CITY OF ALLEN PARK,

Defendant-Appellant,

and

JOYCE A. PARKER,

Defendant.

FOR PUBLICATION
May 18, 2023
9:00 a.m.

No. 357955
Wayne Circuit Court
LC No. 14-003826-CZ

---

DALE COVERT, and all others similarly situated,

Plaintiff-Appellee,

v

CITY OF ALLEN PARK,

Defendant-Appellant.

No. 357956
Wayne Circuit Court
LC No. 18-004458-CK

---

Before: RICK, P.J., and O'BRIEN and PATEL, JJ.

PATEL, J.

Collective-bargaining agreements (CBAs) are creatures of contract and the language of the contract controls when discerning the scope and terms of benefits therein. Our Supreme Court reiterated this well-established principle in *Kendzierski v Macomb Co*, 503 Mich 296; 931 NW2d

-1-

604 (2019), in the context of interpreting whether the various CBAs in that case conferred lifetime vested medical benefits to retirees. After closely examining the language of the contracts, the Court held that none of the CBAs conferred lifetime vested benefits because the language of the CBAs did not so state; instead, the Court held that the unambiguous terms outlined in the CBAs expired at the end of the CBAs' durational clauses, and did not extend any further.

In contrast, the CBAs at issue in these consolidated cases contain explicit language conferring medical benefits to retirees beyond the durational terms of the CBAs. We hold that the plain language of these contracts controls, in keeping with the principles outlined in *Kendzierski*. We affirm.

## I. FACTS AND PROCEEDINGS

These consolidated cases arise from modifications to retiree healthcare benefits under CBAs. The plaintiffs in LC No. 14-003826-CZ (COA Docket No. 357955) are Allen Park Retirees Association, Inc ("APRA")[1] and Janice K. Pillar, as personal representative of the estate of Russell Pillar (collectively, the Pillar plaintiffs).[2] LC No. 18-004458-CK (COA Docket No. 357956) is a class action brought by Dale Covert as the representative plaintiff (collectively, the Covert plaintiffs). At the time these actions were filed, Pillar and Covert were retired city employees who were formerly represented by various labor unions.

Pillar was a command officer employed by the Allen Park Police Department and a member of the Allen Park Police Lieutenants and Sergeants Association collective-bargaining unit. He retired from employment in July 1993. At the time of his retirement, Pillar's employment was governed by a CBA in effect for the period of July 1, 1991 to June 30, 1994. That CBA provided for retiree healthcare benefits. The CBA provided for specific coverages, though those coverages varied somewhat depending on the age at retirement and date of hire. The CBA also provided that the city "reserves the right to change any and/or all insurance company(ies) and/or plan(s), providing the replacement program is equal to or better than the program available from the present company, subject to the mutual agreement of the City and the Union."

Covert is a now-retired deputy police chief who was employed by the city's police department. Covert's appointment to deputy police chief was ratified through a professional services contract, which incorporated by reference certain provisions of a CBA.

The CBAs in effect when Pillar and Covert retired provided for healthcare benefits for retirees and their dependents, with premiums to be paid by the city. The operative language of the applicable CBAs is not disputed.

---

[1] APRA is a nonprofit corporation whose membership is comprised of pensioners of the city of Allen Park, their beneficiary spouses, and qualified dependents.

[2] Russell Pillar died after this action was filed and has been substituted by Janice Pillar, as personal representative of his estate.

The applicable CBA in the Pillar case is the 1991-1994 CBA, which provided in pertinent part:

> Retired employees who were hired after 12/1/91 shall be covered by an HMO plan with the same coverage as the Blue Cross/Blue Shield plan, cost sustained by the City, until the retired employee reaches age 65 or is eligible for Medi-Care, (sic) when the City will supplement with a "65 Plan." Should an employee, either active or retired, become deceased, said employee's spouse and eligible dependents under the plan shall continue to be covered, provided said spouse remains unmarried.

Covert's professional service contract was tied to the 2003 to 2008 CBA, which provided in relevant part:

> **<u>Retiree Health Insurance</u>** Retired Employees, and surviving, and non-married spouses, and eligible dependents, shall continue to be covered by this plan, with the full cost sustained by the City, until the retired Employees and surviving non-married spouses reach age 65 or are eligible for medicare (sic). Upon reaching eligibility for Medicare, the Retiree and/or the surviving non-married spouse shall apply for Medicare benefits. Upon application and approval of Medicare benefits, the retiree and/or surviving non-married spouse shall have the above listed Blue Cross/Blue Shield benefits (Section 22.2) reduced to cover that portion not covered by Medicare. This also covers individuals on HMO programs.

Both CBAs required employees to enroll in Medicare at age 65, after which the city would provide supplemental healthcare insurance.

After plaintiffs' retirement, the state of Michigan placed the city into receivership, and an emergency manager was appointed. Joyce Parker was appointed as emergency manager (EM) for the city pursuant to the Local Financial Stability and Choice Act, MCL 141.1541 *et seq*. In 2013, Parker issued Order No. 2013 — 015 ("Order 15"), which modified the retiree healthcare program by shifting the cost of deductibles and copays to the retirees, but did not shift premium costs. These modifications were continued by the city after Parker's authority as EM ended in 2017.

The Pillar plaintiffs challenged these modifications in an action filed in 2014. In 2017, the trial court dismissed the Pillar plaintiffs' claims against Parker, holding that the claims were moot because Order 15 was intended to be temporary and Parker was no longer an EM. The court also granted the city's motion for summary disposition. The Pillar plaintiffs appealed, and this Court agreed that the claims against Parker were moot because she was no longer EM. *Allen Park Retirees Ass'n, Inc v City of Allen Park*, 329 Mich App 430, 434-435; 942 NW2d 618 (2019) ("*APRA I*"). This Court stated that "any continuing modifications of the retiree healthcare benefits is the product of city action, not that of the EM." *Id.* at 443.

In support of their challenge to the city's continuation of the modifications, the Pillar plaintiffs relied on this Court's decisions in *Harper Woods Retirees Ass'n v City of Harper Woods*, 312 Mich App 500; 879 NW2d 897 (2015), and *Kendzierski v Macomb Co*, 329 Mich App 430; 942 NW2d 618 (2017), rev'd 503 Mich 296 (2019). However, just a few weeks after the oral argument before this Court in *APRA I*, our Supreme Court reversed *Kendzierski*, holding that the

retiree-benefit provisions in the at-issue CBAs expired when the CBAs expired because there was no language in the CBAs extending retirement benefits beyond the duration of the CBAs. *Kendzierski,* 503 Mich at 325. This Court remanded the Pillar plaintiffs' claims to the trial court for further consideration in light of our Supreme Court's decision in *Kendzierski*. *APRA I*, 329 Mich App at 443, 446. In so doing, this Court directed:

> On remand, the trial court shall not consider the effect of Order 15 because it is no longer in effect. That is, any rights that plaintiffs might have under the CBA, as well as any rights that the city might have to alter those rights, have returned to the status that would exist as if Order 15 had never been entered. [*Id.* at 446.]

The Covert plaintiffs' class claims are substantively identical to the breach-of-contract claims raised by the Pillar plaintiffs.[3] The city also moved for summary disposition, arguing that even though it was no longer under the governance of an EM, Order 15 was still in effect and authorized the healthcare modifications. The trial court denied the city's motion for summary disposition, reasoning that healthcare benefits were a vested right and were required to be restored after the EM's authority ended. But this decision was made before our Supreme Court decided *Kendzierski* and before this Court decided *APRA I*. The city filed an application for leave to appeal, which this Court granted.[4] This Court ultimately affirmed the trial court's order, relying on *APRA I*, stating "[u]nder [*APRA I*], this Court has already concluded that Order 15 was temporary, and therefore, has no continued applicability to plaintiff's health care benefits" and that " 'any continuing modification of the retiree health care benefit is the product of city action, not that of the [EM].' " *Covert v City of Allen Park*, unpublished per curiam opinion of the Court of Appeals, issued June 25, 2020 (Docket No. 348728), p 4, quoting *APRA I*, 329 Mich App at 443. Therefore, this Court affirmed the trial court's denial of the city's motion for summary disposition.

On remand, the Pillar plaintiffs' and the Covert plaintiffs' cases were consolidated. Plaintiffs moved for partial summary disposition of their breach-of-CBA claims under MCR 2.116(C)(9), (10), and (I)(1). In response, the city argued that it was entitled to summary disposition under MCR 2.116(I)(2) because our Supreme Court's decision in *Kendzierski*, 503 Mich 296, precluded plaintiffs' actions. The trial court granted plaintiffs' motions for partial summary disposition. The city moved for reconsideration, which was denied. The city filed applications for leave to appeal in each case, which this Court granted and consolidated the appeals.[5]

---

[3] The trial court granted Covert's motion for class certification.

[4] *Dale Covert v City of Allen Park*, unpublished order of the Court of Appeals, entered June 26, 2019 (Docket No. 348728).

[5] *Allen Park Retirees Association, Inc v City of Allen Park*, unpublished order of the Court of Appeals, entered September 29, 2021 (Docket No. 357955); *Dale Covert v City of Allen Park*, unpublished order of the Court of Appeals, entered September 29, 2021 (Docket No. 357956).

## II. APPLICATION OF *KENDZIERSKI*

The city argues that, pursuant to our Supreme Court's decision in *Kendzierski*, plaintiffs are not entitled to vested medical benefits outside the duration of the CBAs. We disagree.

### A. STANDARD OF REVIEW

"Interpretation of a collective-bargaining agreement, like interpretation of any other contract, is . . . a question of law . . . subject to review de novo." *Arbuckle v Gen Motors LLC*, 499 Mich 521, 531; 885 NW2d 232 (2016). The trial court's decision on a motion for summary disposition is also reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

Plaintiffs moved for partial summary disposition under MCR 2.116(C)(9) and (10). "When deciding a motion under MCR 2.116(C)(9), which tests the sufficiency of a defendant's pleadings, the trial court must accept as true all well-pleaded allegations and properly grants summary disposition where a defendant fails to plead a valid defense to a claim." *Capital Area Dist Library v Mich Open Carry, Inc*, 298 Mich App 220, 227; 826 NW2d 736 (2012) (quotation marks and citation omitted). "Summary disposition under MCR 2.116(C)(9) is proper when the defendant's pleadings are so clearly untenable that as a matter of law no factual development could possibly deny the plaintiff's right to recovery." *Id*. (citation omitted). Motions for summary disposition under MCR 2.116(C)(10) test the factual sufficiency of a claim. *El-Khalil*, 504 Mich at 160. The trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." The motion "may only be granted when there is no genuine issue of material fact." *Id*. "If, after careful review of the evidence, it appears to the trial court that there is no genuine issue of material fact and the opposing party is entitled to judgment as a matter of law, then summary disposition is properly granted under MCR 2.116(I)(2)." *Lockwood v Twp of Ellington*, 323 Mich App 392, 401; 917 NW2d 413 (2018).

### B. LEGAL ANALYSIS

CBAs are contracts and "contract principles apply to CBAs just as they do with regard to any other contract." *Kendzierski*, 503 Mich at 296. "[T]he main goal in the interpretation of contracts is to honor the intent of the parties." *Mahnick v Bell Co*, 256 Mich App 154, 158-159; 662 NW2d 830 (2003). This is done by giving the plain and unambiguous words of a contract their plain and ordinary meaning. *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 292; 778 NW2d 275 (2009); *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 664; 770 NW2d 902 (2009). The words and phrases of the contract cannot be read in isolation, but "must be construed in context and read in light of the contract as a whole." *Auto Owners Ins Co v Seils*, 310 Mich App 132, 148; 871 NW2d 530 (2015) (citations omitted). "If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous." *Wells Fargo Bank, NA v Cherryland Mall Ltd Partnership (On Remand)*, 300 Mich App 361, 386; 835 NW2d 593 (2013) (quotation marks and citations omitted).

The issue in *Kendzierski* was whether the terms of the CBAs in that case conferred lifetime vested medical benefits to retirees. The pertinent facts in *Kendzierski* were summarized by our Supreme Court as follows:

This is a class action brought on behalf of approximately 1600 unionized Macomb County employee retirees who worked for defendant under various CBAs dating back to 1989. Plaintiffs claim that in 2009 and 2010 defendant breached these agreements by reducing and altering their healthcare benefits; plaintiffs now seek both monetary damages and injunctive relief. It is undisputed that each CBA contained an express three-year durational provision *and that none of the CBAs contained a provision expressly granting a vested right to lifetime and unalterable retirement healthcare benefits.* The trial court granted defendant's motion for summary disposition, concluding that while plaintiffs are entitled to lifetime healthcare benefits under the agreements, defendant is permitted to make reasonable modifications to those benefits. The Court of Appeals affirmed in part and reversed in part, concluding that while plaintiffs are entitled to lifetime healthcare benefits, those benefits cannot be modified absent plaintiffs' consent. [*Kendzierski*, 503 Mich at 302 (emphasis added and citation omitted).]

The clause in the CBAs concerning retiree medical benefits in *Kendzierski* provided:

Retirees: The Employer will provide fully paid Blue Cross/Blue Shield Hospital-Medical coverage to the employee and the employee's spouse, after eight (8) years of service with the Employer, for the employee who leaves employment because of retirement and is eligible for and receives benefits under the Macomb County Employees' Retirement Ordinance . . . . [*Id*. at 303.]

This clause does not contain language that specifies how long the retiree medical benefits are provided for. Absent language stating that the benefits were conferred for a defined period of time, our Supreme Court held that this clause in the CBA "did not grant plaintiffs a vested right to lifetime and unalterable benefits." *Kendzierski*, 503 Mich at 301.

The plaintiffs relied on two additional provisions in the CBAs—one concerning benefits conferred to surviving spouses and one directing retired employees and their spouses to enroll in Medicare upon reaching age 65—to argue that the contracts were ambiguous as to whether retiree medical benefits vested beyond the durational clause of the CBAs. They argued that each of these provisions manifested intent to have lifetime vested retiree benefits. The majority disagreed. The Court concluded instead that the surviving-spouse provision "only speaks to the disposition of retiree benefits upon the death of the retiree, which could occur within the three-year duration of the CBAs." *Id*. at 318-319. Similarly, the Medicare enrollment did not establish that benefits would last past the expiration of the CBA; instead, that clause addressed the cessation of benefits if the retiree reached age 65 within the duration of the CBA. *Id*. at 321. Applying established rules of contract interpretation, the Court explained:

It is undisputed that none of the CBAs at issue specifies that defendant committed itself to provide lifetime and unalterable healthcare benefits. It is also undisputed that the CBAs contain three-year durational provisions. Therefore, the CBAs guarantee benefits only until the agreements expire and no longer. In other words, because the CBAs do not specify an alternative ending date for healthcare benefits, their general durational clauses control. [*Id*. at 315.]

The Court held that the trial court erred by considering extrinsic evidence because the CBAs were not ambiguous. *Id*. at 316. The Court emphasized that the parties "easily could have said" in the CBAs that retiree healthcare benefits were vested for life. *Id.* at 325. Absent such language, "the only reasonable interpretation of the CBAs is that the contractual right to healthcare benefits expired when the CBAs expired." *Id.* Therefore, the Court concluded that "the contractual obligations provided therein expired when the CBAs expired." *Id*. at 326.

Unlike the CBAs in *Kendzierski*, the CBAs at issue in this appeal *do* contain provisions that expressly grant retirees vested medical benefits beyond the duration of the CBAs. To reiterate, the applicable CBA in the Pillar case provides in relevant part:

> **Retired employees** who were hired after 12/1/91 *shall be covered* by an HMO plan with the same coverage as the Blue Cross/Blue Shield plan, cost sustained by the City, ***until the retired employee reaches age 65 or is eligible for Medi-Care, (sic) when the City will supplement with a "65 Plan."*** Should an employee, either active or retired, become deceased, said employee's spouse and eligible dependents under the plan shall continue to be covered, provided said spouse remains unmarried. (Emphasis added.)

Similarly, the CBA in the Covert case provides in relevant part:

> **<u>Retiree Health Insurance</u>** *Retired Employees*, and surviving, and non-married spouses, and eligible dependents, *shall continue to be covered by this plan*, with the full cost sustained by the City, ***until the retired Employees and surviving non-married spouses reach age 65 or are eligible for medicare (sic).*** Upon reaching eligibility for Medicare, the Retiree and/or the surviving non-married spouse shall apply for Medicare benefits. *Upon application and approval of Medicare benefits, the retiree and/or surviving non-married spouse shall have the above listed Blue Cross/Blue Shield benefits (Section 22.2) reduced to cover that portion not covered by Medicare. This also covers individuals on HMO programs*. (Emphasis added.)

These contract provisions are not ambiguous: "Retired employees. . .shall be covered by [the plan] until the retired Employee reaches age 65," and "Retired Employees. . .shall continue to be covered by this plan. . .until the retired Employees. . .reach age 65[.]" The explicit language in these CBAs continue the same plan medical benefits for retirees, with the cost sustained by the city, until the retirees (and surviving non-married spouses) reach age 65, after which there are directions for Medicare enrollment and coverage for supplemental insurance. This is a specific alternative ending date for benefits, beyond the general durational clause. Based on established rules of contract interpretation, as clarified in *Kendzierski*, the CBAs provide vested medical benefits to retirees under the provided terms.

The language in these contracts, which state that retirees "shall be covered" and "shall continue to be covered" by the respective medical plans until age 65, is markedly different from the CBA language in *Kendzierski* and the cases cited by the dissent. The CBAs in *Kendzierski* were silent as to how long medical benefits would be provided to retirees, only stating how long an employee was required to work for the defendant before *qualifying* for benefits. Similarly, the

CBA language interpreted in *Gallo v Moen Inc*, 813 F3d 265 (CA 6, 2016) did not contain any language providing medical benefits to retirees for a specified period of time:

> Continued hospitalization, surgical and medical coverage will be provided without cost to past pensioners and their dependents prior to March 1, 1996.
>
> * * *Effective March 1, 1996, future retirees will be covered under the new medical plan. The co-premium amount for the retiree will be frozen at the co-premium in effect at time of retirement.
>
> * * *
>
> Future retirees as of [January 1999] will be reimbursed for Medicare Part B for employee and spouse at Medicare Part B $45.50/$91.00.
>
> [*Gallo*, 813 F3d at 269.]

Again, unlike the CBAs in this case, there was no language in the contract at issue in *Gallo* stating how long retirees were entitled to benefits, i.e., language specifying an alternative end date for healthcare benefits.

*Serafino v City of Hamtramck*, 707 Fed Appx 345 (CA 6, 2017), an unpublished federal Sixth Circuit Court of Appeals opinion, does construe similar language to the CBAs here. However, we find *Serafino* unpersuasive and decline to adopt its analysis. The dissent posits that because *Kendzierski* fleetingly cited *Serafino*, the legal conclusion in *Serafino* is persuasive and should control. We disagree. First, *Kendzierski* did not cite to *Serafino* for its substantive ruling and analysis, presumably because the at-issue CBA language was very different. Instead, *Kendzierski* cited *Serafino* for the proposition that, just because a particular CBA contains language advising retirees to enroll in Medicare at age 65, this does not translate to an intent to vest benefits beyond the terms of the CBA. *Kendzierski*, 503 Mich at 321. *Kendzierski* did not consider or opine on whether CBA language that explicitly provides that medical benefits "shall continue" until age 65, etc., such as the language in this case, constituted a defined alternative end date, separate from the general durational clause. We hold that it does.

Second, as an unpublished Sixth Circuit Court of Appeals opinion, we find that the substantive analysis in *Serafino* has little persuasive value in light of the guiding principle established by *Kendzierski*: that normal rules of contract interpretation apply to CBAs and courts should refrain from putting their finger on the scale to favor any one interpretation over another. We reject *Serafino* because the plain language of the CBAs here *does* provide an alternative end date for the benefits, and, in keeping with *Kendzierski*, we hold that the plain language of the CBAs controls.

The fact that Order 15 was implemented by the EM during the city's receivership does not change the analysis regarding how the retiree medical benefits clauses in the CBAs should be interpreted. As this Court made clear in its prior decisions in both *APRA I* and *Covert*, the effect of the modifications under Order 15 is no longer relevant, and the city's continuation of those modifications after the EM was discharged must instead be analyzed in accordance with our Supreme Court's decision in *Kendzierski*.

For these reasons, the trial court did not err by granting plaintiffs partial summary disposition under subrule (C)(9), based on the unambiguous terms of the CBAs and the rules of interpretation and analysis set forth in *Kendzierski*. Because we decide this issue based on the unambiguous language of the CBAs, we do not need to reach the other contract-interpretation issues raised by the parties.

### III. PLAINTIFFS' ADDITIONAL CLAIMS

The city further argues that the trial court should have summarily dismissed plaintiffs' remaining promissory-estoppel claim, and the related claims of plaintiffs' entitlement to the remedies of injunctive relief, declaratory relief, and mandamus. We disagree.

Plaintiffs alleged that the city's promise of retirement benefits induced them to remain in the city's employment long enough to obtain the benefits. Plaintiffs' remedy claims depend on the viability of their promissory-estoppel claims. But the city did not move for summary disposition. Rather, the city simply argued in response to plaintiffs' motions for *partial* summary disposition on the breach-of-contract claim that it was entitled to summary disposition under MCR 2.116(I)(2), which provides, "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." Because plaintiffs' motions were limited to the breach-of-contract claim, the trial court did not err by limiting its disposition to that particular claim and declining to address the city's argument regarding plaintiffs' other claims.

Affirmed. We do not retain jurisdiction.


/s/ Sima G. Patel
/s/ Michelle M. Rick