*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* RAYMOND T. CONLEY TRUST.

---

WALLACE CONLEY and KATHLEEN MEYERS,

        Appellants,

v

MAUREEN CONLEY, Trustee of the RAYMOND
T. CONLEY TRUST,

        Appellee.

FOR PUBLICATION
August 22, 2024
9:00 a.m.

No. 366180
Emmet Probate Court
LC No. 20-014121-TV

---

Before: JANSEN, P.J., and REDFORD and D. H. SAWYER*, JJ.

PER CURIAM.

In this matter involving enforcement of a settlement agreement regarding a trust, appellants, Wallace Conley and Kathleen Meyers, appeal of right the probate court's final order denying their motion for disclosure of a settlement agreement and to enforce the settlement agreement. Appellants argue: (1) the probate court erred by determining the terms of the settlement agreement were unambiguous, and (2) the probate court erred by determining the terms of the settlement agreement were not breached. We affirm.

## I. BACKGROUND

The Raymond T. Conley Trust was established on November 30, 1989. Raymond T. Conley was the grantor of the trust, and he and his wife, Lois M. Conley, were the initial cotrustees. The first amendment to the trust appointed his daughter and now appellee, Maureen Conley, as cotrustee if Raymond or Lois were unable to serve in their respective roles. When Lois died on June 22, 2007, Maureen became cotrustee. She became the sole successor trustee upon Raymond's incapacitation and subsequent death. Appellants are appellee's siblings, and they alleged Maureen breached her duties as trustee. Lengthy litigation followed Raymond's death. In September 2021, the parties entered a confidential settlement agreement. In November 2022, appellants moved the probate court to enter an order disclosing and enforcing the settlement agreement after they

---

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

-1-

received multiple fiduciary K-1 forms from the Internal Revenue Service related to the Lois M. Conley Trust, and regarding capital gains, attorney fees, and accountant fees. The probate court found the receipt of the K-1 forms by appellants resulted from a breach of the settlement agreement by Maureen. The probate court entered an order enforcing the settlement agreement and setting the matter for a hearing to determine a remedy for the breach. Maureen moved for reconsideration. The probate court granted reconsideration, set aside its order enforcing the settlement agreement, treated appellants' motion as a petition to reopen trust administration, and granted the petition. After additional hearings, the probate court denied appellants' request for relief. The probate court found that the provisions of the settlement agreement were unambiguous. And, on the basis of the unambiguous terms of ¶ 11 of the settlement agreement, the court concluded that the issuance of the K-1 forms was a "natural" consequence of the implementation of the settlement agreement and, thus, each sibling was responsible for their respective tax consequences arising from the agreement's implementation. This appeal followed.

## II. TERMS OF THE SETTLEMENT AGREEMENT

Appellants argue the probate court erred by determining the terms of the settlement agreement were unambiguous. We disagree. Appellants did not argue before the probate court that the terms of the settlement agreement were ambiguous, which means their issue is unpreserved. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020). Michigan follows "the 'raise or waive' rule of appellate review" in civil cases. *Tolas Oil & Gas Exploration Co*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 2 (quotation marks and citation omitted). Nevertheless, "this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). We elect to overlook the lack of preservation and consider the issue because the issue involves a question of law and the facts necessary for its resolution have been presented.

Because "[a] settlement agreement is a binding contract," *Dabish v Gayar*, 343 Mich App 285, 289; 997 NW2d 463 (2022) (quotation marks and citation omitted), "[r]esolution of this issue . . . requires this Court to interpret contract provisions, which presents a question of law reviewed de novo," *Patel v FisherBroyles, LLP*, 344 Mich App 264, 271; 1 NW3d 308 (2022). "This Court's goal in interpreting a contract is always to ascertain and give effect to the intent of the parties as reflected in the plain language of the contract." *Id*. at 271-272. "The words of a contract are interpreted according to their plain and ordinary meaning, and this Court gives effect to every word, phrase, and clause while avoiding interpretations that would render any part of the document surplusage or nugatory." *Id*. at 272 (quotation marks and citation omitted). "An unambiguous contract term must be enforced as written unless contrary to public policy." *Id*. "A contract is ambiguous if it is capable of irreconcilably conflicting interpretations." *Id*. "If a contract is ambiguous, the proper interpretation presents a question that must be decided by the fact-finder." *Id*.

The trial court's factual findings are reviewed for clear error. *Sparks v Sparks*, 440 Mich 141, 151; 485 NW2d 893 (1992). "A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with a definite and firm conviction that a mistake has been

made." *Seifeddine v Jaber*, 327 Mich App 514, 516; 934 NW2d 64 (2019) (quotation marks and citation omitted).

Appellants argue that ¶¶ 10 and 11 of the settlement agreement irreconcilably conflict and that this conflict creates an ambiguity within the agreement's provisions. We disagree.

The provisions at issue state:

> 10. The further administration of any of the activities of either trust, or the administration of any estate of either LOIS M. CONLEY or RAYMOND T. CONLEY will not involve Wallace or Kathleen. In other words, they will have no claims of interest, nor will they have any responsibility.
>
> 11. All parties will be responsible for their own attorney fees, costs or other obligations associated with the administration of the Trusts or the settlement of all matters.

The word "further" in ¶ 10 is a temporal adverb indicating administration of the trust *after* execution of the settlement agreement. In other words, administration of the trust after the settlement is complete would not involve Wallace and Kathleen. However, all parties were responsible for their obligations associated with *effectuating* the settlement agreement under ¶ 11. These two provisions are complementary, rather than ambiguous. Because the "language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning[.]" *City of Grosse Pointe Park v Mich Muni Liability & Prop Pool*, 473 Mich 188, 198; 702 NW2d 106 (2005) (quotation marks and citation omitted). As a result, the probate court did not err by determining that the terms of the settlement agreement were unambiguous.

III. BREACH OF SETTLEMENT AGREEMENT

Appellants next argue the probate court erred by determining Maureen did not breach the settlement agreement. We disagree.

This Court reviews the probate court's decision to enforce a settlement agreement for an abuse of discretion. *Groulx v Carlson*, 176 Mich App 484, 493; 440 NW2d 644 (1989).[1] An abuse of discretion occurs when the probate court's ruling is outside the range of reasonable and principled outcomes. See *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). Settlement agreements are subject to the laws of contract formation and interpretation. *Mich Mut Ins Co v Indiana Ins Co*, 247 Mich App 480, 484; 637 NW2d 232 (2001). "The existence

---

[1] Cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), but they may be considered as persuasive authority. *Aroma Wines & Equip, Inc v Columbian Distribution Servs*, 303 Mich App 441, 453; 844 NW2d 727 (2013), aff'd and remanded 497 Mich 337; 871 NW2d 136 (2014).

and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

As noted, a settlement agreement is a binding contract. *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 663; 770 NW2d 902 (2009). Courts "enforce contracts according to their terms, as a corollary to the parties liberty to enter into a contract." *Id*. at 664. In doing so, courts "examine contractual language and give the words their plain and ordinary meanings." *Id*. "[T]he main goal in the interpretation of contracts is to honor the intent of the parties." *Mahnick v Bell Co*, 256 Mich App 154, 158-159; 662 NW2d 830 (2003). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law." *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 292; 778 NW2d 275 (2009). "Further, contractual terms must be construed in context and read in light of the contract as a whole." *Auto Owners Ins Co v Seils*, 310 Mich App 132, 148; 871 NW2d 530 (2015) (citations omitted).

Appellants claim Maureen breached the settlement agreement. A breach-of-contract claim has three elements: "(1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 601; 865 NW2d 915 (2014). The existence of the settlement agreement is undisputed, and, as discussed earlier, its terms are unambiguous. The issue is whether Maureen breached the contract. We concur she did not.

Paragraph 2 of the settlement agreement stated: "The Sum of $73,500 will be paid to Wallace and Kathleen, for a total of $147,000 within two (2) business days after the complete execution of this document." Paragraph 4 added: "On or before October 31, 2021, Wallace and Kathleen will also each receive $110,000, for a total of $220,000." In exchange, "Maureen will receive the house . . . free and clear of all claims by Wallace and Kathleen." Appellants effectuated the transfer of the house to Maureen by quitclaim deed.

The probate court held the conveyance of the home from the trust to Maureen was necessary "in order to complete the agreement between the parties." This was Maureen's "distributed share of the trust assets as a beneficiary," while appellants "received a [monetary] distribution from the trust." It was insufficient for appellants to "sign a quit claim deed and then the settlement agreement was completed." The conveyance of the house "then triggered the issuance of the K-1s that went to not the trust, but to the qualified trust beneficiaries for capital gains." The probate court reasoned, "the issuance of the K-1 is an obligation that is a natural result of the implementing of this settlement agreement." This interpretation was in keeping with ¶ 11. In appellants' view, they should receive monetary distributions from the trust, but any responsibility resulting from Maureen's distribution—the house—should be borne entirely by Maureen. Such an outcome is patently inequitable. The conveyance of the house is a result of the settlement agreement, which funded the monetary distributions conveyed to Wallace and Kathleen. Appellants fail to comprehend, or recognize, conveyance of the home at 908 Spruce Street was integral and necessary for them to receive monetary distributions from the trust, which they recognized as getting "what [they] wanted." The conveyance resulted in capital gains tax. The probate court properly held the capital gains tax was a natural result of implementing the settlement agreement, and the parties were responsible for their respective obligations associated with the settlement under ¶ 11. As a result, Maureen did not breach the settlement agreement.

Lastly, appellants argue the probate court "made assumptions about the issuance of the K-1s from outside of the record, and outside of the scope of the question presented." Specifically, they contend the "Probate Court reached conclusions on the issuance of K-1s as from a sale of the property disposed of by the Settlement Agreement." The probate court considered the house's conveyance, which was contemplated by ¶ 5 of the settlement agreement: "Maureen will receive the house . . . free and clear of all claims by Wallace and Kathleen." As a result, the probate court did not make assumptions from outside the record.

Affirmed.

/s/ Kathleen Jansen
/s/ James Robert Redford
/s/ David H. Sawyer